PUBLIC LEDGER CO. *v.* MEMPHIS.

(*Jackson.* June 30, 1893.)

INJUNCTION. *Of municipal corporation.*

Injunction does not lie to restrain a municipal corporation from executing a contract, made with a newspaper owner without advertising for bids, to insert its advertisements, notices, and other printing in his paper for one year, to be paid for by the line, square, or column, and in no event to exceed a stipulated amount, under a provision in its charter that, before entering into any contract for any purpose, the Commissioners shall advertise for bids.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

THOS. M. SCRUGGS for Public Ledger Co.

METCALF & WALKER for Memphis.

SNODGRASS, J. The bill in this cause shows that the Board of Fire and Police Commissioners of Memphis "awarded a contract to do the public printing of the city (advertising, publishing ordinances, etc.) to the Scimitar Publishing Company for one year, at a price not to exceed by more than $450 the price paid for public printing the year preceding, and were about to enter into the

contract so awarded, and would do so unless enjoined;" and that complainant was a property owner and tax-payer of the city, and had the right to enjoin the execution of such contract as illegal. The illegality of the contract was predicated upon alleged violation of the following provision in the Act creating the Taxing District of Memphis:

"The said Fire and Police Commissioners shall in every case, before entering into any contract for any purpose, advertise daily, for one week or more, for such proposals for the work to be done, the material to be furnished, or the service to be performed, and shall open all the bids on the day named in the advertisement in the presence of a quorum of not less than three of the members of said Board of Public Works, and shall enter such bids, with the names of the bidders, in a book to be kept for that purpose, which book shall at all times be open to the inspection of the tax-payers; and every bid shall remain open for at least one week for canvass and discussion, after the opening, before any contract shall be awarded upon it; and after that time the award shall be made, if at all, to the lowest responsible bidder, who shall in all cases be required to give ample bond and security for its performance; the bond and security to be approved by the Supervisors of Public Work and Fire and Police Commissioners, who sign the contract."

It is averred that the defendant advertised for bids as follows:

"Sealed proposals will be received by us until Thursday, March 10, 1892, at 12 o'clock M., for the following work to be done, service to be rendered, or materials to be furnished the city of Memphis, Shelby County, Tenn., for the current year 1892, viz.: For publishing in a daily paper all orders, ordinances, notices, and public advertisements of the city of Memphis as they may be passed or ordered. All bids must be labeled 'Bids for Public Printing,' and must be accompanied by a certified check on some solvent bank for the sum of ($250) two hundred and fifty dollars, which check will be returned to the bidder after the award of contract and execution of same. All bids for public printing to be in accordance with the conditions of the resolution passed by the Legislative Council on February 18, 1892, which is as follows: 'That in advertising for proposals from daily newspapers for making publications of notice during the year 1892, the Secretary be instructed to require from publishers a sworn statement of paid circulation by carriers in the city, week to week, for three months, ending February 1, 1892; said statements to be subject to verification by other publishers bidding, if desired by this Council, the contract to be awarded to the newspaper showing the largest daily average on this basis for the period mentioned, the rate to be paid to be the same as that fixed by law for the publication of regular legal notices, such as are published by

the various Courts of the State.' The Board reserves the right to reject any and all bids.

" By order of the Board.

"W. L. CLAPP, *President.*"

"*Attest:* JOHN J. SHEA, *Secretary.*"

Complainant states that no advertisement was made for bids under this provision of the law other than that set out; that such advertisement is not in accordance with the statute, and no contract could be properly made under it, and none was awarded under it, but the Legislative Council of defendant city, recognizing this, repealed the resolution embodied in the same, and thereupon awarded the contract for public printing without any advertisement whatsoever, and in violation of law.

Complainant states that, in response to said publication, the Scimitar Publishing Company filed its affidavit as to circulation; that no other newspaper filed any affidavit or made any statement as to its circulation; that thereupon the defendant, by vote, repealed the resolution of February, 1892, hereinbefore set out, and awarded the contract for public printing to the Scimitar Publishing Company, as before stated.

The injunction was granted, but, on motion, it was dissolved, and the bill dismissed. Complainant appealed, and assigns errors.

The decree is correct. Not denying the right of complainant as a tax-payer to enjoin defendant from the execution of an illegal contract, if it

would or might result in irreparable injury (*Lynn v. Polk*, 8 Lea, 121), no such case is presented here as calls for the intervention of a Court of Equity by the extraordinary process of injunction. The contract, as alleged, could, at most, be void, and not enforceable against the city, and, in no event, could complainant, as a tax-payer, be therefore injured or affected. The remedy by injunction to prevent municipal corporate action, is one not lightly to be applied. If the matter complained of is one merely of simple contract of no serious moment, and which may be defeated by resistance to its enforcement, even by the body making it, there is no sufficient ground for use of the writ at the instance of the tax-payer.

In this case, too, there is no manifestly illegal contract shown. The terms in which that contract was made are not set forth. It does not appear that the city authorities have agreed to pay any large or small sum in gross for a whole year's work. For aught that appears here, the Board may have merely designated the Scimitar Publishing Company as the newspaper owner in whose publication it proposed to insert its advertisements, notices, etc., for one year, and agreed or contracted with them that printing thus done should be at so much per line, square, or column, but in no event to exceed by four hundred and fifty dollars the cost of the preceding year.

The effect of all this, or other equivalent form of contract, would amount to no more than designating

6—9 P

a paper in which these things would be published, and limiting the price for the work when done.

Against such an arrangement as this, the statute is not directed. Each advertisement for bids must necessarily be made without a previous advertisement for terms, for the contracts which do require preliminary advertisement cannot be contracts for such advertisement.

Therefore, as to all advertisements which the city is to make under this provision, it is manifest that the Board had the legal authority to contract for them. As the legal duty of making other publications, as notices and ordinances, devolves upon it also, it is equally clear that it might publish each one without preliminary advertisement for bids upon its printing. The terms used in reference to contracts, included in a proper construction of the Act, forbid the idea that reference was had to each item of printing which the city might need. The delay of such a proceeding is not contemplated, nor the expense, for often the advertisement for bids would be as expensive as the advertisement of a notice or an ordinance for the printing of which bids were solicited.

These things were not in contemplation of the law-makers in the elaborate and important provisions made to restrain the power of the board to make contracts. The contracts referred to were such as would bear some reasonable proportion to the care taken to prevent their execution, except upon terms enacted. If the city could contract

for each advertisement and each notice and each ordinance or separate piece of printing, without advertising for bids, it could, for the same reason, designate one newspaper to publish all, and that without advertisement. With the policy of doing this upon any particular basis—as upon certificate of circulation or other ground—the Courts have nothing to do. Circulation might be a factor in the value of the publication, which should be taken into consideration in estimating good to be derived from it; but we do not undertake to say that upon this or any other theory the Board could absolutely bind the city by a contract for a stipulated sum, to be paid in gross, for a year's work, or that it could bind the city at all by such contract or any other of that duration and importance, except in the manner provided in the law quoted, after such advertisement as therein contemplated. All we do undertake to decide is that, as each item of the work might have been contracted for separately, without advertising, and the paper in which they were to be published might have been designated in advance or at time of each publication by the board, that equity would not enjoin any contract it had made which did not affirmatively appear to have affected other or more than this, even where there was a necessity for its intervention at the instance of a tax-payer not here existing.

The decree is affirmed with costs.