## INTERSTATE COMMERCE COMMISSION v. SOUTHERN PAC. CO. et al.

(Circuit Court, S. D. California, S. D. June 1, 1903.)

No. 1,039.

1. CARRIERS—SUIT TO ENFORCE ORDER OF INTERSTATE COMMERCE COMMISSION —PARTIES.

In a suit by the Interstate Commerce Commission against a railroad company to enforce obedience to an order requiring it to desist from the enforcement of a rule reserving to itself, as initial carrier, the unqualified right of routing beyond its own terminal all shipments made under an established through joint rate, the connecting carriers joining in the making of such through rate, while proper, are not necessary, parties.

2. SAME—FINDINGS OF COMMISSION—PRIMA FACIE LAWFULNESS OF ORDER.

A finding by the Interstate Commerce Commission that a rule promulgated by railroad companies, and the practice thereunder, with respect to a particular kind of traffic, subject shippers to an undue, unjust, and unreasonable prejudice and disadvantage, and give to the carriers an undue and unreasonable preference and advantage, is one of fact; and an order, based thereon, requiring the companies to desist from maintaining and enforcing such rule, as in violation of section 3 of the interstate commerce law, is prima facie a lawful order, such as a court is required to enforce in a suit instituted for that purpose under section 16.

3. SAME—PERTINENCY OF FINDINGS.

A finding by the Interstate Commerce Commission that the purpose and effect of a rule and practice adopted by railroad companies, by which, as initial carriers, they reserved the right to route through shipments beyond their own lines, were to assist in carrying into effect a pooling agreement between their connecting carriers, made in violation of section 5 of the interstate commerce law, is pertinent to, and supports the lawfulness of, an order requiring the companies to desist from maintaining and enforcing such rule.

4. SAME—SUIT BY COMMISSION TO ENFORCE ORDER—DEMURRER.

On demurrer to a bill filed by the Interstate Commerce Commission for the enforcement of an order made by it, any substantial doubt as to the lawfulness of the order should be resolved in its favor.

In Equity.   On demurrers to bill.

L. H. Valentine, L. A. Shaver, and J. H. Call, for complainant.

Wm. F. Herrin and Flint & Barker, for defendant Southern Pac. Co.

C. N. Sterry, for defendant Santa Fé Pac. R. Co.

WELLBORN, District Judge.   This suit is brought, under section 16 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3167]), to enforce the following orders entered by the Interstate Commerce Commission at its office in Washington, D. C., on the 2d day of June, A. D. 1902:

"No. 575.

"The Consolidated Forwarding Company v. The Southern Pacific Company, The Atchison, Topeka & Santa Fé Railway Company, The Santa Fé Pacific Railway Company, and The Southern California Railway Company.

"No. 576.

"The Southern California Fruit Exchange v. The Southern Pacific Company, The Atchison, Topeka & Santa Fé Railway Company, The Santa Fé Pacific Railway Company, and The Southern California Railway Company.

"This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and the commission having, after due investigation, made and filed a report and opinion herein containing its findings of fact and conclusions thereon, which said report and opinion is hereby referred to and made a part of this order:

"It is ordered and adjudged that the defendants, the Southern Pacific Company, the Atchison, Topeka & Santa Fé Railway Company, the Santa Fé Pacific Railway Company, and the Southern California Railway Company, be, and they severally are hereby, notified and required to wholly cease and desist, from and after the 20th day of June, 1902, from maintaining or enforcing a rule or regulation whereby shippers of oranges, lemons, or other citrus fruits from points in southern California to points on and east of the Missouri river and other Eastern destinations are denied the right of designating for the transportation of their said property and having such property transported over any of the defendants' established and published joint or continuous lines or routes between any of the aforesaid points of shipment and destination at the published schedule rate or charge applying over such route or line.

"It is further ordered and adjudged that said defendants, the Southern Pacific Company, the Santa Fé Pacific Railway Company, and the Southern California Railway Company, be, and they severally are hereby, notified and required to wholly cease and desist from and after the 20th day of June, 1902, from failing and refusing, as initial carriers, to keep open for the use of the public their published rate or charge for the transportation of oranges, lemons, and other citrus fruits from points in southern California to points on and east of the Missouri river, for and during all of the time such rate or charge may be lawfully in force, over each and every of the established routes upon which the said rate or charge is in their published joint schedules or tariffs stated to apply, and from further continuing their present practice, whereby the application of such published rate or charge over any of such published established routes, when specified by a shipper for the transportation of his property, is allowed to or withheld from such shipper, and the property shipped by him, as they, the said defendants, or either of them, may determine.

"And it is further ordered that a notice embodying this order be sent forthwith to each of said defendants, together with a copy of the report and

opinion of the commission herein, in conformity with the provisions of the fifteenth section of the act to regulate commerce." Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165].

The rule against which said orders are directed is declared in the agreement establishing the through routes, as follows:

"In guarantying the through rate named herein, the absolute and unqualified right of routing beyond its own terminal is reserved to initial carrier giving the guaranty. In accordance with this rule, agents will not accept shipping orders or other documents if routing instructions are shown thereon. Neither will agents accept verbal routing instructions."

Section 16 of the act to regulate commerce provides, among other things, that in a case of this character—

"The court shall proceed to hear and determine the matter speedily as a court of equity and without the formal pleadings and proceedings applicable to ordinary suits in equity, but in such manner as to do justice in the premises; * * * and on such hearing the findings of fact in the report of said commission shall be prima facie evidence of the matters therein stated; and if it be made to appear to such court on such hearing or on report of any such person or persons, that the lawful order or requirement of said commission drawn in question has been violated or disobeyed, it shall be lawful for such court to issue a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further continuing such violation or disobedience of such order or requirement of said commission and enjoining obedience to the same."

The defendants, other than the Southern Pacific Company, have demurred to the bill specially, on the ground that their connecting lines in the through routes and tariffs mentioned in said orders are not joined as parties to the suit, while all of the defendants have demurred generally, and for cause urge, in argument, that the rule referred to in said orders, whereby the right of routing is reserved to the initial carrier, and the practice under said rule, as alleged in the bill, are not illegal.

The demurrers will be disposed of in the order of their statement, and the allegations of the bill bearing directly upon the issue raised by the general demurrer will be particularly noted when that branch of the case is reached.

1. It is no defense to a wrongdoer that other participants in the unlawful acts complained of are not joined in the suit. While the connecting companies of the defendants would have been proper, they are not necessary, parties, and the objection as to their nonjoinder is untenable. I. C. C. v. Texas & Pac. Ry. Co. (C. C.) 52 Fed. 162, affirmed in 162 U. S. 205, 16 Sup. Ct. 666, 40 L. Ed. 940.

The case of Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499, is essentially different, both in the facts and the relief sought, from the case at bar, and therefore inapplicable as a precedent here.

2. The question, and only question, to be decided under the general demurrer, is whether or not the rule and practice above stated are unlawful. All of the parties hereto, complainants and defendants, have devoted considerable portions of their briefs to the question whether or not said rule, of itself (that is, irrespective of the practice thereunder), contravenes said act. In the view, however, which I

take of the case, a decision of this question is unnecessary to a ruling upon the demurrer, and therefore I shall not review the points and authorities submitted in relation thereto.

While there is no obligation resting upon connecting carriers to establish over their lines through routes and joint tariffs, yet, if such routes and tariffs are established, the carriers cannot attach thereto a condition which subjects any particular person or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatever. Whether or not, in such a case, the whole arrangement for through routes and tariffs, as well as the prejudicial condition, would be void, need not now be determined.

At common law, where the initial carrier undertakes to carry to a destination beyond its own line, the carrier has the right to select the connecting route. This, however, is because of the initial carrier's liability beyond its own road. Atchison, etc., R. Co. v. Denver & N. O. R. Co., 110 U. S. 667, 680, 4 Sup. Ct. 185, 28 L. Ed. 291. Since, however, in the case at bar, the initial carrier is relieved of that liability (see Report of Commission, pp. 202 and 206b), such carrier is, beyond its own line, really a mere forwarder; and it would seem, as contended by complainant, that under such circumstances an application of common-law principles would give to the shipper, rather than the initial carrier, the right of routing, in the absence of any agreement to the contrary. I know of no reason, however, why, at common law, the carrier and the shipper, even where the carrier is merely a forwarder beyond its own line, may not agree that the carrier shall select the route.

Conceding, then, the validity at common law of a reservation to the initial carrier of the right of routing, the question remains, whether or not the rule, and practice thereunder, which the defendants, by said orders, are required to cease from enforcing and maintaining, are violative of the interstate commerce act.

Speaking of the Interstate Commerce Commission, the Supreme Court of the United States says:

"It is charged with the general duty of inquiring as to the management of the business of railroad companies, and to keep itself informed as to the manner in which the same is conducted, and has the right to compel complete and full information as to the manner in which such carriers are transacting their business. And with this knowledge it is charged with the duty of seeing that there is no violation of the long and short haul clause; that there is no discrimination between individual shippers, and that nothing is done, by rebate or any other device, to give preference to one as against another; that no undue preferences are given to one place or places, or individual or class of individuals, but that in all things that equality of right which is the great purpose of the interstate commerce act shall be secured to all shippers." I. C. C. v. Railway Co., 167 U. S. 506, 17 Sup. Ct. 896, 42 L. Ed. 243.

Said act provides, among other things, as follows:

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any

particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. * * *" Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155].

In paragraph 11 of the bill it is expressly alleged that said rule, and practice thereunder, are violative of said act, in that, among other things, "said rule and practice subject shippers of oranges, lemons, and other citrus fruits from points in southern California to points on and east of the Missouri river, and to other Eastern destinations, to an undue or unreasonable prejudice or disadvantage, and also in that it subjects the traffic in oranges, lemons, and other citrus fruits between said points to an undue or unreasonable prejudice or disadvantage, and gives the said defendants an undue or unreasonable preference and advantage." These allegations, although the use of the connective "or" would have subjected them to special exceptions for uncertainty, are, in my opinion, allegations of matters of fact. Texas & Pacific R. Co. v. I. C. C., 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940.

On page 46 of the brief of Atchison, Topeka & Santa Fé Railroad Company, filed December 4, 1902, is the following statement, which conforms entirely to the authorities above quoted:

"The question as to whether the rule in controversy creates an undue or unreasonable prejudice, or an undue or unreasonable preference, is solely a question of fact, which must be found as a fact before any order can be made relative to such a matter."

Since, then, the rule, and practice thereunder, in question, are expressly alleged in the bill to work an undue or unreasonable prejudice or disadvantage to the shippers of citrus fruits, it follows that the orders of the Interstate Commerce Commission forbidding the enforcement and maintenance of said rule and practice are lawful orders.

The conclusion above announced as to the lawfulness of the orders in controversy proceeds, of course, upon the theory that the suit in this court is a proceeding de novo, and that the court is not limited to the issues or evidence before the commission, and this theory seems to be upheld by the following authorities cited in complainant's brief: I. C. C. v. C., N. O. & T. P. Ry. Co. (C. C.) 56 Fed. 934, 935; K. & I. Bridge Co. v. L. & N. Ry. Co. (C. C.) 37 Fed. 614, 2 L. R. A. 289; Shinkle, etc., Co. v. L. & N. R. Co. (C. C.) 62 Fed. 693; and I. C. C. v. Ala. Mid. Ry. Co. et al., 168 U. S. 175, 18 Sup. Ct. 45, 42 L. Ed. 414.

If, however, it be conceded that the pending suit is not a new proceeding, in the broad sense above indicated, and that the lawfulness of the orders sought to be enforced must be justified by the findings of the commission, still I am of opinion that the commission does find that said rule works an unlawful discrimination. On pages 206d and 206e of the report of said commission occurs the following:

"We find nothing in the statute authorizing routes or tariffs of any kind available to shippers only at the option and in the discretion of the carriers, and upon such varying conditions and considerations as they may from day to day or from hour to hour see proper to be governed by, regardless of the wishes and interests of the shipper.

"Our conclusion is that the practice of the defendant carriers in denying to the shippers the use of their transportation facilities by the established

routes is in violation of the statute, and, in its application by the defendants to the traffic in question, subjects the owners and shippers thereof to undue, unjust, and unreasonable prejudice and disadvantage, and gives to the carriers an undue and unreasonable preference and advantage."

The latter part of the paragraph last above quoted is on its face a finding of fact, and the circumstance that in the report of the commission it is put—irregularly, perhaps—under the head of "Conclusions" does not make it any the less a finding of fact. There is nothing to the contrary, so far as I can see, in British Queen Min. Co. v. Baker Silver Min. Co., 139 U. S. 222, 11 Sup. Ct. 523, 35 L. Ed. 147, or Saltonstall v. Birtwell, 150 U. S. 417, 14 Sup. Ct. 169, 37 L. Ed. 1128, or Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373, cited at page 7 of the reply brief of Southern Pacific Company, filed February 2, 1903.

There is still another view of the pleadings, which, to my mind, shows prima facie the lawfulness of said orders. The commission, at page 199 of its report, finds as follows:

"The routing circular of January 20, 1900, extracts from which appear herein in connection with the findings as to the rule of the carriers reserving to themselves the routing, shows that the orange shipments are forwarded by the initial carrier so as to give certain percentages of the traffic to connecting lines."

The commission further finds, at page 206a:

"It further appears that a tonnage pool of this traffic as between the connecting carriers not defendants was established, and that the defendants so control the routing as to give specific percentages of this traffic to their several connections, thereby fulfilling and giving effect to this unlawful and forbidden arrangement.

"Reason is found in the facts shown for the belief that the suppression of the practice of allowing rebates was only an incidental result of, and was not the primary or principal object of, the defendant carriers, in taking over to themselves control of the routing beyond their respective roads, but that the object was to give effect to the tonnage division before stated between their connections."

Thus it appears from the findings of the commission that the traffic in question is pooled between the connecting lines of the defendants, and that the rule which reserves to the initial carrier the right of routing is one of the essential means to this pooling arrangement, and was so intended by the carriers. From these findings, the conclusion, it seems to me, is inevitable that said rule, and practice thereunder, are violative of the fifth section of the interstate commerce act, which is as follows:

"Sec. 5. That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any contract, agreement, or combination with any other common carrier or carriers for the pooling of freights of different and competing railroads, or to divide between them the aggregate or net proceeds of the earnings of such railroads, or any portion thereof; and in any case of an agreement for the pooling of freights as aforesaid, each day of its continuance shall be deemed a separate offense." Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156].

It is no justification of said rule and practice that they are designed to prevent, and do prevent, unlawful rebates from connecting lines to shippers. Pooling and rebates are both within the prohibitions

of the interstate commerce act, and one cannot be employed as a preventive of the other.

The Southern Pacific Company, in its brief filed January 5, 1903, referring to the above-mentioned finding of the commission as to a tonnage pool between the several connections of the defendants, says:

"This statement, as we have shown, is made wholly outside of any issue presented by the pleadings, and, in its nature, appears as an attempt in the 'conclusions' to prejudge a fact not in issue, and not embraced in the findings of fact."

This view I am unable to accept. Paragraph 14 of the petition alleges, among other things, that the rule reserving to the initial carrier the right of routing "was not adopted in good faith by said defendants," etc. The answer of the last-named defendant denies this allegation, and avers that said defendant has exercised and is exercising said right of routing "for the purpose of maintaining lawful rates, and preventing violations of the second and third sections of the interstate commerce law," etc. The issue thus raised certainly includes the purpose and use of the right of routing, which are essential elements in fixing the character (that is, the lawfulness or unlawfulness) of said right; and therefore the findings of the commission that a tonnage pool exists between defendants' connections, and that said right of routing is exercised for its advancement, are within the pleadings.

While my convictions as to the matters above passed upon are strong, it may be well to observe that, were they less pronounced, any substantial doubt should be resolved in favor of the orders sought to be enforced (Mo. Pac. Ry. Co. v. T. & P. Ry. Co. [C. C.] 31 Fed. 862; I. C. C. v. L. & N. R. Co. et al. [C. C.] 102 Fed. 709; East Tenn., V. & G. Ry. Co. et al. v. I. C. C., 99 Fed. 64, 39 C. C. A. 413; U. S. v. Moore, 95 U. S. 763, 24 L. Ed. 588; I. C. C. v. Louisville & N. R. Co. [C. C.] 118 Fed. 613), and particularly should this rule be observed when the hearing is on demurrer.

It is true, as suggested in the reply brief of the Atchison, Topeka & Santa Fé Railroad Company, filed February 6, 1903, that the decree of the Circuit Court of Appeals in East Tenn., V. & G. Ry. v. I. C. C., supra, was reversed on appeal to the Supreme Court. 181 U. S. 1, 21 Sup. Ct. 516, 45 L. Ed. 719. That part of the opinion, however, of the Circuit Court of Appeals, pertinent to the question now under consideration, and quoted in complainant's brief, filed January 12, 1903, at page 41, as follows:

"It has been suggested that traffic managers are much better able, by reason of their knowledge and experience, to fix rates, and to decide what discriminations are justified by the circumstances, than the courts. This cannot be conceded, so far as it relates to the Interstate Commerce Commission, which, by reason of the experience of its members in this kind of controversy, and their great opportunity for full information, is, in a sense, an expert tribunal"

—Seems not to have been overruled, but approved, by the Supreme Court, as shown in the following extracts from its opinion:

"To state these issues is at once to demonstrate that their decision, as a matter of first impression, properly belonged to the commission, since upon

that body the law has specially imposed the duty of considering them. Whilst the court has, in the discharge of its duty, been at times constrained to correct erroneous constructions which have been put by the commission upon the statute, it has steadily refused, because of the fact just stated, to assume to exert its original judgment on the facts, where, under the statute, it was entitled, before approaching the facts, to the aid which must necessarily be afforded by the previous enlightened judgment of the commission upon such subjects. This rule is aptly illustrated by the opinion in Louisville & Nashville Railroad Co. v. Behlmer (1900) 175 U. S. 648 [20 Sup. Ct. 209, 44 L. Ed. 309], in which case, after pointing out the same error of construction adopted and applied by the commission in the present case, the court declined to undertake an original investigation of the facts, saying (page 875 [175 U. S., page 219, 20 Sup. Ct., 44 L. Ed. 309]): 'If, then, we were to undertake the duty of weighing the evidence in this record, we would be called upon, as a matter of original action, to investigate all these serious considerations which were shut out from view by the commission, and were not weighed by the Circuit Court of Appeals because both the commission and the court erroneously construed the statute. But the law attributes prima facie effect to the findings of fact made by the commission, and that body, from the nature of its organization, and the duties imposed upon it by the statute, is peculiarly competent to pass upon questions of fact of the character here arising.' "

See 181 U. S. 27, 28, 21 Sup. Ct. 526, 45 L. Ed. 719.

Demurrers overruled, and defendants allowed 30 days to answer.