L. G. Reese, Appellee, v. The Sanitary District of Chicago, Appellant.

Gen. No. 36,772.

filed November 6, 1933.

William Rothmann, for appellant; Meyer C. Edelman, of counsel.

George D. Sullivan and Mitchell Kilanowski, for appellee; Mitchell Kilanowski, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff brought suit as the assignee of certain accounts of George B. Dietrich, seeking to recover for goods sold and delivered to defendant. In his statement he claimed $12,321.35; upon trial by the court plaintiff withdrew certain items and the court deducted $1,919 for overcharges and gave judgment for plaintiff for the balance of $9,839.35, from which defendant appeals.

It was sufficiently proven that the goods were ordered by defendant's purchasing agent and received by it.

Defendant's principal point is that the contracts for the purchase of the goods were made by defendant without soliciting bids, which it is said is required by statute, hence no liability can arise against defendant, a municipal corporation. The goods purchased are a miscellaneous lot of articles, consisting for the larger part of stationery, envelopes, letterheads and the like, also rubber boots, gloves, rubber matting, rubber hose, axe handles, mops, cuspidors, sponges, and like articles. Plaintiff argues that the statute requiring bids does not cover the purchase of such articles. The point is well taken. The statute is as follows:

"All contracts for work to be done by such municipality, the expense of which will exceed five hundred dollars, shall be let to the lowest responsible bidder therefor upon not less than ten days' public notice of the terms and conditions upon which the contract is to be let having been given by publication in a news-

paper of general circulation published in said district and the said board shall have the power and authority to reject any and all bids and readvertise; . . . and that eight hours shall constitute a day's work.'' (Cahill's Illinois Revised Statutes 1931, ch. 42, ¶ 348, page 1207.)

It seems clear that this covers only ''contracts for work to be done'' by such municipality and not the purchase of such articles as above mentioned. The words, ''work to be done'' ordinarily imply some exertion of strength or physical or intellectual effort. In Webster's dictionary the word ''work'' is defined as the general term for exertion or effort directed to an end. In a number of cases in other jurisdictions the words ''work, materials and labor'' in similar statutes were held inapplicable to the employment of auditors, to contracts for advertising, to the leasing of rooms and to contracts to furnish rubber hose to a fire department. *Heston v. Atlantic City,* 93 N. J. L. 317; *Delker v. Board of Chosen Freeholders of Atlantic County,* 90 N. J. L. 473; *Davies v. New York City,* 83 N. Y. 207; *Public Ledger Co. v. Memphis,* 93 Tenn. 77, 23 S. W. 51; *City of Trenton v. Shaw,* 49 N. J. L. 638; *Bloomquist v. Isanti County,* 152 Minn. 126, 188 N. W. 64. In *Neal Publishing Co. v. Rolph,* 169 Cal. 190, the supervisor of the city and county of San Francisco let a contract for a certain quantity of printed forms and blanks for use in various offices of the municipality; the contract was attacked, charging the violation of the charter requirements which covered ''every contract for work to be performed for the city and county.'' The court held that the contract for printed forms and blanks was not ''for work'' for the city and county within the meaning of the provision in the charter; that the contract was simply to furnish certain finished articles of merchandise. The opinion says:

"A contractor undertaking to sell and deliver to a city completed chattels or merchandise does not thereby undertake to perform 'work' for the city. The distinction, in this respect, between a contract or agreement for sale to a city and a contract for the doing of work therefor is so clear as hardly to require statement. In the one case, if any work on his part is done in the way of manufacture or preparing the chattels or merchandise necessary to be sold and delivered, either personally or through employees, it is work done solely for himself, and in no proper sense, for the city. His contract with the city is simply for the sale and delivery of the finished article, and until the delivery the city has no interest whatever in the property. In the other case he contracts to furnish labor or personal service directly to the city, as where he agrees to construct a building for the city for a stipulated sum, or where he agrees to grade or otherwise improve a street belonging to the city, or to perform any other work for the city. Such contracts include the performance of work for the city."

In section 1 of Cahill's St. ch. 127, ¶ 1, State Contracts, the legislature provided specifically that stationery and printing paper furnished for the use of the State and printing ordered by the General Assembly shall be let by contract to the lowest bidder. In section 28 of chapter 127 it is provided that supplies for the various departments of the State, except in certain cases, shall be purchased in large quantities, contracts to be let to the lowest and best bidder. The provision in the Sanitary District Act, Cahill's St. ch. 42, ¶ 348, makes no such provisions but is confined to contracts for work.

Defendant's counsel say that the words in the statute, "for work to be done by such municipality," should be construed as meaning "for such municipality." Whether the work was done "by" or "for"

the municipality would make no difference for the statute clearly refers to work in the ordinary sense, of something produced by labor. This construction is emphasized by the last phrase of the statute, which reads, "and that eight hours shall constitute a day's work." This manifestly refers to something produced by labor, otherwise the phrase is meaningless. The cases cited on this point by counsel for defendant are not in point. All of them are concerned with contracts for improvements involving work. We are asked to read into the statute a requirement for competitive bidding in the purchase of supplies. This is for the legislature and not for the courts to do. However, there is nothing in the statute which forbids soliciting such bids.

It appears that George B. Dietrich, who sold the goods, did business under five names—the Simplex Printing Company, the Superior Loose Leaf Company, the Continental Supply Company, the Great Western Manufacturing Company, and the Illinois Supply Company, none of which was shown to be a duly organized corporation. The purchases were divided among these organizations covering a period from December, 1927, to December, 1928. Apparently each class of articles purchased was itemized separately, although in many instances they were made on the same day from the same concern. Defendant argues persuasively that these orders were deliberately split up into smaller amounts in order to evade the statutory requirement for competitive bidding. This may be true, but as we are holding that the statute requiring competitive bidding does not apply to such purchases the point is not decisive.

It is no doubt the law that an assignee of choses in action takes them subject to the same defenses as might be asserted against the original parties, and the case was tried upon that theory.

There was no reversible error in the ruling of the court upon the proffered testimony of the witnesses as to the values of the articles. The court's ruling was based upon the failure of the witnesses to identify the particular articles they were asked to value. ''Comparison of values between the thing in question and others of different quality which are not involved in the litigation is not allowable for the purpose of calculating the value of the one in question. A witness cannot testify that a different article was worth a specified sum, and that the one in question was superior or inferior.'' Abbott's Trial Evidence, vol. 3, p. 547. The court, however, found there were overcharges and reduced plaintiff's claim by over $1,900, from which we may conclude that the court gave proper consideration to the competent evidence as to the value of the articles.

Defendant's counsel makes out a case which suggests the probability of an attempt at petty cheating in purchasing these supplies. We doubt if any statute could suppress this, especially where, as here, hundreds of articles were purchased ranging in price from $9 up.

We see no convincing reason for reversing the judgment, and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.