TENNESSEE PUBLIC SERVICE Co. *v.* CITY OF KNOXVILLE, *et al.*

*(Nashville,* December Term, 1935.)

Opinion filed March 9, 1936.

Simpson, Thacher & Bartlett, of New York City, Frantz, McConnell & Seymour, Jennings & O.'Neil, and Grimm & Tapp, all of Knoxville, and Trabue, Hume & Armistead, of Nashville, for plaintiff.

Kennerly & Key, W. H. Peters, Jr., and Frank Montgomery, all of Knoxville, for defendant, City of Knoxville.

Fowler & Fowler, of Knoxville, for defendant, Hess & Barton, Inc.

Mr. Special Justice Holmes delivered the opinion of the Court.

This is a suit by Tennessee Public Service Company to enjoin the city of Knoxville from making certain contracts with the Tennessee Valley Authority and the Federal Emergency Administration of Public Works, and to enjoin the city of Knoxville from constructing or having constructed an electrical distribution system, and to enjoin the city of Knoxville from carrying out a construction contract with the defendant, Hess & Barton, Inc. The chancellor granted a *fiat* for writ of injunction. The defendants filed separate sworn answers, which,

by stipulation, were withdrawn, and defendants allowed to stand upon their demurrers filed.

The original bill was twice amended. And upon the hearing on the demurrers to the bill, as amended, the chancellor overruled all grounds of the demurrers, and allowed an appeal.

Complainant has filed the record for error, seeking to correct one portion of the chancellor's decree.

For convenience and brevity, complainant will be referred to hereinafter either as complainant or TPS; city of Knoxville as the city; Hess & Barton, Inc., as Hess & Barton; Tennessee Valley Authority as TVA; and the Federal Administration of Public Works as PWA.

It is unnecessary to set out in detail the averments of the bill nor the grounds of demurrers. Reference will be made to the bill as it may become necessary.

One of the assignments of error made by the defendants below is that the chancellor should not have allowed the first and second amendments to the original bill. The amendments are quite long, and need not be set out here. ■ Suffice it to say that whether or not the amendments should be allowed was matter for the exercise of the chancellor's discretion. And unless there has been an abuse of discretion, there can be no reversal. We are unable to see that there was an abuse of discretion in allowing the amendments.

### RIGHT OF COMPLAINANT TO MAINTAIN SUIT.

Defendants insist that TPS does not show that it has any right to maintain the suit.

TPS bases its right to sue on its *status* (a) as a federal taxpayer; (b) as a municipal taxpayer; and (c) as own-

er and holder of a nonexclusive franchise granted to it by the city.

(a) There can be no reason for TPS asserting that it is a federal taxpayer except for the purpose of enjoining an alleged unwarranted disposition of money or property belonging to the government of the United States. For reasons to be hereinafter stated, we are of opinion complainant cannot maintain this suit on its *status* as a federal taxpayer.

(b) and (c) It is unnecessary to encumber this opinion with a discussion of the standing of TPS as a municipal taxpayer; and unnecessary to determine whether it may maintain this suit on its *status* as a municipal taxpayer, because the bill does aver that TPS has a franchise from the city of Knoxville; that it is furnishing electric current to the city and to the inhabitants; that its service has been, and is, efficient and sufficient. It is true that the franchise is not exclusive.

Let it be conceded that TPS, as holder of a nonexclusive franchise, has no right to an injunction to restrain nor prevent unlawful competition. And let it be conceded that the city itself may lawfully enter into competition with TPS. We are dealing, now, only with the right of complainant to wage its suit, not with its right, ultimately, to relief. The complainant avers that it is the intent and purpose of the city illegally to compete with complainant, in that the contracts with PWA and TVA require that the city shall agree and bind itself that TVA shall have full and complete power, during a period of twenty years, to control and fix the rates at which the city shall furnish electric current to consumers.

Whether the city can, lawfully, make such contracts, and having made them, can lawfully compete with

complainant are questions which complainant, having a property right in its franchise, is entitled to have adjudicated. *Frost* v. *Corporation Commission of State of Oklahoma,* 278 U. S., 515, 49 S. Ct., 235, 73 L. Ed., 483; *City of Campbell* v. *Arkansas-Missouri Power Co.* (C. C. A)., 55 F. (2d), 560.

We have carefully read the briefs filed on behalf of defendants; and while there are some authorities cited which, upon a casual reading of same, are opposed to our conclusion in this regard, we are satisfied with our conclusion that the owner and holder of a franchise, though not exclusive, is entitled to relief by way of injunction against threatened or actual injury to his property right through illegal competition.

We do not regard the principle stated in *Noell* v. *Tennessee Eastern Power Company,* 130 Tenn., 245, 169 S. W., 1169, as in conflict with the conclusion we have reached. In *Noell* v. *Tennessee Eastern Power Company* a petition had been filed by the power company to condemn certain land owned by Noell, who demurred to the petition on the ground that the acts (chapter 208 of Acts of 1895 and chapter 127 of 1909) were unconstitutional, in that the acts conferred rights of eminent domain on corporations organized thereunder, and withheld by implication this right from individuals, firms, and partnerships. The lower court overruled the demurrer and this court, in affirming the action of the lower court, said: "It is not necessary to determine this question here, however, for the reason that the plaintiff in error, Noell, who thus assails the acts as discriminatory, is not a person adversely affected by the alleged discrimination." 130 Tenn., 245, at page 247, 169 S. W., 1169.

Suppose the petition to condemn had recited and

shown on its face that the power company had refused and failed to pay the privilege tax assessed against it, or suppose that the petition had shown on its face that the power company had refused and would refuse to recognize any right or power of the state to control its resale rates. Upon such a showing, would the court have held that the power company could exercise its right of eminent domain?

In this connection, Hess & Barton contend that complainant cannot sue in the same cause claiming as taxpayer and as owner of a franchise.

We are unable to see that there is any conflict or incongruity. We cannot see why, if by the same act or acts, injury is threatened to one as a taxpayer and also to his property rights in a franchise, he may not, in the same suit, seek to assert his rights in both capacities.

#### ESTOPPEL.

Defendants insist that because complainant entered into a contract with TVA looking to a sale of complainant's distribution system to TVA complainant is estopped to deny the right and power of the city to acquire, own, and operate an electric distribution system.

And it is claimed complainant is judicially estopped to deny or question the right of TVA to produce and sell to the city electric energy, or to deny the right of the city to own and operate an electric distribution system.

In the view we have in respect of this court's jurisdiction to determine any question of the rights and powers of TVA, and in the view we have of the right and power of the city of Knoxville to own and operate an electric distribution system, it is if no consequence

whether or not complainant is estopped to make these particular questions.

■ However, if those were live questions, we should be in accord with that part of the opinion of the chancellor which holds the facts alleged do not show an estoppel, neither *in pais* nor judicial.

Can this court consider the questions made in the bill in respect of the claimed invalidity of the Act of Congress creating TVA (16 U. S. C. A., secs. 831-831cc), or the Act of Congress, title 2, NIRA (40 U. S. C. A., sec. 401, et seq.), under which PWA is claiming to function? And can this court determine whether the administrator has authority under title 2 NIRA to make the supposed loan and grant to the city of Knoxville?

■ Our answer to those questions must be in the negative. TVA is a corporation, chartered by Act of Congress. Neither the corporation, nor any representative, nor agent thereof, is party to this suit. In respect of title 2 NIRA, no agent, representative, nor officer of the government of the United States is party to the suit. In the absence of such party or parties, we think this court is without jurisdiction as to these matters.

We do not mean to be understood as committing ourselves to a declaration that the validity of an Act of Congress can never be drawn in question unless the government of the United States, or some agent, representative, or officer of the government is made party. But we do mean to say that the validity of an Act of Congress cannot be put in question unless there is a party to the suit who is claiming some right thereunder, or attempting to enforce some provision contained in the act. Neither of which conditions obtain here.

As stated in complainant's brief (volume 1, p. 177):

"The court is determining merely the actual justiciable controversy between TPS and the city of Knoxville. No decree enforceable by contempt proceedings is sought against these governmental agencies and no decision will be res adjudicata for or against them, so long as they refrain from becoming parties."

It might be a sound statement to say that the court, in determining the justiciable rights as between TPS and the city, would have jurisdiction to determine questions of the validity of the TVA act and title 2 NIRA if the city were undertaking to execute any provision of either of these acts. But that is not the case here. In so far as this bill presents a case for exercise of jurisdiction by this court only the conduct of the city is involved, and there is involved only the right and power of the city to so conduct. Neither of the Acts of Congress refers to the city of Knoxville; and neither undertakes to grant to the city any right nor power. In support of its claim that it is entitled to have this court to undertake to determine the validity of these Acts of Congress complainant cites *Ryan* v. *Amazon Petroleum Corporation* (C. C. A.), 71 F. (2d), 1; *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S., 180, 41 S. Ct., 243, 65 L. Ed., 577; *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S., 1, 36 S. Ct., 236, 60 L. Ed., 493, L. R. A., 1917D, 414, Ann. Cas., 1917B, 713; *Yarnell* v. *Hillsborough Packing Co.* (C. C. A.), 70 F. (2d), 435; *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S., 429, 15 S. Ct., 673, 39 L. Ed., 759.

An analysis of these cases cited by complainant will show that in each instance, either there was some agent or representative or officer of the government party to the suit or there was some one a party to the suit who was claiming to exercise some right or power by virtue

of the involved act. And we think that neither of these cases is in conflict with the conclusion we have reached.

What was said in the opinion in the case of *Massachusetts* v. *Mellon*, 262 U. S., 447, at page 488, 43 S. Ct., 597, 601, 67 L. E., 1078, is pertinent and illustrative:

"We have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute but the acts of the official, the statute notwithstanding."

Defendants contend that TVA and the Administrator of Public Works are necessary parties; and that no relief could be granted on the bill in their absence as parties.

We are of opinion that these parties, though they might have been proper parties, were not necessary parties so that the suit could not be maintained in their absence.

To so much of the bill in this cause as questions the right and power of the city to make the contract with

PWA and TVA, on grounds other than the claimed invalidity of the Acts of Congress, and other than the claim that the Administrator of Public Works is exceeding his power and authority under title 2 NIRA, neither TVA nor the administrator is a necessary party. In *Interstate Commerce Commission* v. *Southern Pacific Co.* (C. C.), 123 F., 597, 599, the court said:

"It is no defense to a wrongdoer that other participants in the unlawful acts complained of are not joined in the suit. While the connecting companies of the defendants would have been proper, they are not necessary parties, and the objection as to their nonjoinder is untenable."

In *Wallace* v. *Tipton County,* 3 Shan. Cas., 542, this court, in dealing with a similar question, said:

"To the general rule that all persons who are interested in the object of the bill are necessary and proper parties, there are exceptions, and as the rule is founded upon public conscience and policy, courts of equity will not suffer it to be so applied as to defeat the purposes of justice if they can dispose of the merits of the case before them without prejudice to others who are not parties, or if the circumstances of the case render the application of the rule wholly impracticable. Sto. Eq. Pl., 77. If a party be out of the jurisdiction, it is a sufficient ground for dispensing with his being made a party, and the court may proceed to decree on the questions between the parties who are before the court if no decree is rendered against such absent persons, even though such decree may incidentally question or touch upon their rights. Sto. Eq. Pl., 78, 82. See also *Ibid.*, sec. 135a."

In the later case of *Irwin* v. *Bedford County,* 151 Tenn., 402, 270 S. W., 81, the bill had been filed by the tax-

payers of Bedford county against Bedford county and the county trustee, seeking to have certain road bonds of the county declared void, and to enjoin the county trustee from collecting taxes levied and assessed for the payment of the bonds. And this court held that the holders of the bonds were not necessary parties.

CHAPTER 32, PUBLIC ACTS OF 1935.

Complainant has filed the record for error; and assigns as error the action of the chancellor in holding that chapter 32, Pub. Acts of 1935, empowered the city of Knoxville to contract for, own, and operate an electric distribution system.

Complainant attacks the action of the chancellor (a) because the act in question was not involved in any issue presented by the record and was improperly considered; (b) the act is unconstitutional.

We think it was unnecessary for the chancellor to consider this act; and that it is equally unnecessary for us to determine (a) its applicability to any of the issues in this cause, nor (b) whether or not it is constitutional and valid.

It appears that the chancellor thought it necessary to take this act into consideration because without it the city was without power to contract for, own, and operate an electrical distribution system.

The charter of the city of Knoxville is chapter 412 of the Private Acts of 1923. The caption of the act being:

"An Act to incorporate the City of Knoxville, in Knox County, Tennessee, and to define the rights, powers and liabilities of the same; to fix the boundaries of said municipality, and to repeal all Acts or parts of Acts in conflict with this Act."

Section 5 of the act provides:

"That the city as incorporated under this Act shall have power by ordinance: . . .

"(37) To create, maintain, build or purchase and operate ice plants, fuel yards, electric light works, or gas plants for the purpose of lighting public buildings or streets, parks or other places in the city, or municipal property, houses or hospitals, or works beyond the city, and for the sale of electric current or gas to all persons desiring to purchase the same."

For complainant TPS it is claimed this provision of the charter is obnoxious to the Constitution of the state, in that it is special legislation, and confers upon the city of Knoxville, in its proprietary capacity, rights not conferred upon other cities of the state.

There is no constitutional inhibition against special legislation as to municipal corporations. *Ballentine* v. *Pulaski,* 83 Tenn. (15 Lea), 633; *State* v. *Wilson,* 80 Tenn. (12 Lea), 246, 247.

And we regard the charter provision as a sufficient grant of power to the city of Knoxville to acquire and operate an electric distribution system. *Keenan & Wade* v. *Trenton,* 130 Tenn., 71, 168 S. W., 1053, Ann. Cas., 1916B, 519.

If we are right in our conclusion that the charter confers a sufficient grant of power, then it is wholly unnecessary that we undertake to determine any question made in respect of chapter 32 of the Public Acts of 1935.

In the briefs there is considerable discussion in respect of whether there was proper advertisement for bids before the contract was let to Hess & Barton. The bill does not present any question of lack of advertisement. The only statement in the bill referring to the advertise-

54

ment for bids is: "Complainant is advised that there was no advertising for bids incident to the letting of said contract for said work, as required by the city charter, and that the contract is therefore void."

 This does not amount to a charge that there was no advertisement. And there is no averment that the advertisement, if made, was defective or insufficient in that particular.

 There are two other reasons why we think TPS can claim no relief because of this averment: (a) That there is no showing that any injury has or will result to TPS because of any failure to properly advertise; and (b) because we regard that requirement for advertisement as directory. *Public Ledger Co.* v. *Memphis,* 93 Tenn., 77, 23 S. W., 51.

## BOND ELECTION.

It appears in the bill that on November 25, 1933, the city held an election to determine whether or not it should issue bonds for the purpose of paying for the construction of an electric distribution system. The bill undertakes to attack the validity of this election on the ground that it was not advertised as required by the applicable law.

The only averments of the bill as to this matter are, in the original bill:

"The special election held on November 25, 1933, did not conform to the laws of the State of Tennessee requiring the approval of the electors before a city may lawfully undertake a project such as here alleged, or issue bonds or incur obligations on account thereof, in that no notice of the said special election was published

as required by section 1985 of the Code of the state of Tennessee.''

And in the second amendment to the bill:

''The election held on November 25, 1933, in which defendant attempted to acquire the power to issue bonds in the amount of $3,225,000, which bonds in the amount of $2,000,000 it is now seeking to deliver to PWA pursuant to the illegal arrangement complained of here, was illegal, void and of no effect, for the reason that the only power the defendant city had to issue such bonds arose under and by virtue of the Act of the General Assembly. of the state of Tennessee of 1917, chapter 129 and section 3 of the said Act, as carried into the 1932 Code of Tennessee at section 3701, which requires that all elections held pursuant to such Act and in an effort to issue bonds thereunder: 'shall be advertised at least twenty-one days before the same is held, by publication three times, once a week for three consecutive weeks, in some newspaper of general circulation in such cities or towns, the first of said publications to appear at least twenty-one days before the date of said election.' Complainant avers that there was no such advertisement of said election as required by said Act, and said election and the attempt to issue and sell bonds pursuant thereto were void.''

The original bill charges or attempts to charge that there was a failure to advertise as required by Code, section 1985, which section is a part of the chapter of the Code providing for elections generally.

The amended bill charges that the advertisement was not in accord with Code, section 3701, which is part of a chapter of the Code conferring power upon municipal-

ities generally to issue bonds. Section 3708 of that same chapter provides as follows:

"This chapter does not affect or repeal, modify or change any special law, but is intended and designated as additional legislation, which the authorities of any town or city are authorized to use for the purposes named in said law as therein provided."

It is not averred that the city in holding the bond election was proceeding under the provisions of the Code, sections 3696 to 3708, inclusive. The charter of the city, chapter 412, Private Acts of 1923, section 5, subsection 4, provides:

"Be it further enacted, That the city as incorporated under this Act shall have power by ordinance . . . (4) To issue and sell bonds of said city for any public municipal purpose which shall be direct general obligations of the city, and by ordinance or resolution to fix the maturity dates thereof, and the interest rate, not to exceed six (6%) per cent per annum; provided, however, that all ordinances for the issuance of any such bonds under this subsection shall be submitted to the qualified voters of said city and be approved by majority vote thereof."

In the absence of averment to the contrary, it will be presumed that the city was functioning under its charter provision. If so, the only statute applicable in respect of notice of advertisement of the election would be Code, section 1985.

The only averment of the bill is that there was a failure to advertise "as required by Code, section 1985." It is not averred in what particular or particulars the notice or advertisement was defective. There is no specific averment that there was no advertisement—

only the conclusion of the pleader that the advertisement was not in accord with the provisions of Code, section 1985. Nowhere is there any statement of any particular defect in the mode, manner, nor time of the advertisement.

We are of opinion the averments of the bill in respect of this matter are too general, indefinite, and vague to present an issue.

In view of what has just recently taken place, we doubt whether it was necessary for us to consider any of the questions hereinabove discussed, save and except the question of the charter power of the city of Knoxville to own and operate an electric distribution system.

After this cause had been appealed to this court, while it was pending here, and on the 22d day of February, 1936, the defendant city of Knoxville filed in this cause, in this court, its written motion seeking (1) a modification of the injunction so as to permit the city to execute a new contract with the Federal Emergency Administration of Public Works, and (2) to remand this cause to the chancery court of Knox county for further proceedings thereon.

The motion undertakes to exhibit contracts which the city purposes to execute, one with PWA and one with TVA. Of course, those contracts are not part of the record in this court and we know of no form of procedure by which they may be made part of the record.

The jurisdiction of this court is appellate only, and the cause, if tried here at all, must be tried upon the record as made up and filed.

In support of its motion, the city has filed a brief, citing some recent holdings of the federal courts where the practice and procedure sought by the motion has

been followed. There is no precedent for such a procedure in this state, and we are not ready to establish such a precedent.

The facts set up in the motion, namely, abandonment of the old contracts, and purpose to execute new and different contracts, were not before the chancellor. If this court can adjudicate any question involved, it must do so upon the record as it was presented to the chancellor.

The jurisdiction of the Supreme Court is appellate only. *McElwee* v. *McElwee*, 97 Tenn., 649-657, 37 S. W., 560.

█ Hence we are of opinion that the motion to modify the injunction and to remand the cause must be disallowed.

However, it does now appear to the court that every matter of controversy presented by the bill, of which this court has jurisdiction, save and except the one question of the charter power of the city, upon which we have indicated our opinion, has become moot. And that this appears from the admissions of counsel for the defendant city to the effect that the city no longer insists upon its right to carry out the contracts with PWA and TVA, as those contracts were at the time the bill was filed.

The whole purpose of the bill (those portions of which we have jurisdiction) was to restrain and prevent the city from carrying those contracts into execution. The city, through its counsel, now admits, and has made it appear to this court, that it does not intend to carry out those contracts.

Upon those admissions, all questions of the right and power of the city to enter into and to carry out the contracts have become moot.

There is no need to enjoin the city from something that it has abandoned, no need to enjoin it from a course it admits it does not want to pursue.

 The case having become moot as to the city's power to enter into the contracts with PWA and TVA cannot be maintained, and so much of the bill as seeks relief against those contracts must be dismissed. *Malone* v. *Peay,* 157 Tenn., 429, 7 S. W. (2d), 40.

It follows that a decree will be entered here adjudging that the city of Knoxville has power, under its charter, to contract for, own, and operate an electrical distribution system. As to all other matters, the bill will be dismissed without prejudice to the right of complainant, Tennessee Public Service Company, except as to the matters herein adjudicated.

The costs will be paid one-third by complainant, Tennessee Public Service Company, and two-thirds by the defendant, city of Knoxville.