186 So. 569

**BIRMINGHAM ELECTRIC CO. v. CITY OF BESSEMER et al.**

**6 Div. 347.**

Supreme Court of Alabama.

Feb. 9, 1939.

E. L. All, W. M. Rogers, and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Howard H. Sullinger and George H. Bumgardner, both of Bessemer, for appellees.

Lawrence Dumas, Jr., of Birmingham, for Local Unions 6019, 5931, 5778 and 5802, United Mine Workers of America, amici curiae.

BROWN, Justice.

This is a bill filed by the appellant, the Birmingham Electric Company, against appellees, the City of Bessemer, a municipal corporation, its Mayor and Aldermen, Clerk and Treasurer, and the individuals incumbent in said offices, seeking to restrain and permanently enjoin said defendants from proceeding with the construction of a proposed electric transmission line leading from the City of Bessemer to connect with a transmission line operated, or to be operated, by the Tennessee Valley Authority, at a point approximately fifty miles north of Bessemer; and to enjoin said defendants from constructing and operating a transmission system to serve patrons within and without the limits of said defendant municipality and within the "Birmingham metropolitan area" adequately served by complainant through its privately owned and integrated system covering said area. And, in the alternative, to enjoin said defendants from proceeding with said proposed enterprise, unless the defendant, the City of Bessemer, obtains from the Alabama Public Service Commission a certificate of convenience and necessity authorizing it to construct, maintain and operate said line and distribution system.

And, further, the bill seeks to restrain and enjoin said defendants and each of them "from engaging in unfair or unlawful competition with complainant in complainant's business of distributing and selling electric energy in any of the territory served by complainant; and further perpetually enjoining and restraining said City and each of said respondents from issuing, signing or delivering any bonds of the City of Bessemer, whether revenue bonds or general obligation bonds of said City, to WPA or anyone else to evidence any loan made to said City for the purpose of constructing said electric transmission line or any electric distribution system without first obtaining authority from the Alabama Public Service Commission by order of said Commission authorizing such issue of said bonds as required by Section 9744 of the Code of Alabama of 1923; and further perpetually enjoining and restraining said City and each of said respondents from further proceeding with any acts in furtherance of the construction or operation of any such proposed transmission line or of any such electric distribution system."

The basis of the complainant's right to invoke the jurisdiction and power of the court to these ends is, in short, that it is a domestic corporation authorized to engage in the business of generating, purchasing and distributing electric energy for light, heat and power, with its principal office and corporate domicile in the

City of Birmingham, Jefferson County, Alabama. That by the investment of a large sum of money it has acquired and is maintaining a highly efficient system for the distribution in the metropolitan area, covering the County of Jefferson, and all of the municipalities therein; that it adequately serves all the needs of said territory at reasonable rates, and through the development of its system has anticipated the needs of the future, and its integrated system is capable of meeting the needs of the present and future in said territory; that it enjoys a monopoly in fact, in said field. That it has acquired, possesses and enjoys a franchise granted and confirmed by the City of Bessemer to serve the said City and its inhabitants with electric energy for domestic and commercial uses, and its integrated system is fully equipped and capacitated to meet all the demands for such service, including the operation of a system of transportation within and without the limits of said respondent municipality.

That it owns and maintains valuable property situated within the corporate limits of said municipality, on which it pays taxes, and contributes to the revenue of said City in the payment of large sums annually in excise and license taxes.

That complainant has been so engaged since the year 1924, that its said system is confined to the "Birmingham metropolitan area," in which it now "owns and operates both a complete electric distribution system in said metropolitan area * * * and a complete street railway and motor bus transportation system." That said systems represent an intensive application of the economies of large scale integrated electric distribution, and if complainant be forced to cease or substantially curtail operation in the City of Bessemer and Tarrant City, by the actions of respondents, the result would be to impair seriously "such integration."

That the complainant has been granted a certificate of convenience and necessity by the Alabama Public Service Commission to engage in said business.

The bill alleges that the defendant municipality has contracted debts, outstanding and unpaid, in excess of the constitutional limit, but that it has made application to federal agencies for funds, part as loans and the balance as contribution for the construction of said system, and that defendant proposes and is proceeding to issue revenue bonds, secured by the earnings of said proposed system and plant, and has held a popular election in said municipality submitting the question "Shall the City of Bessemer construct or acquire, own and operate a municipal electric light and power system?" And that a majority of the qualified electors voting in said election voted in the affirmative.

Also, that the defendant is proceeding to do all the things the bill seeks to enjoin [except issue general obligation bonds], without obtaining such certificate of convenience and necessity, and proposes to operate said power line and distribution system in furnishing electricity, not only to its own inhabitants, but to the inhabitants of Tarrant City, and others outside of said municipalities in said "Birmingham metropolitan area" served by the complainant, to complainant's financial hurt.

The Circuit Court sustained the demurrers filed by the defendant to the bill and dismissed the same for want of equity, hence this appeal.

One of the questions brought forward arises out of the insistence of appellee that complainant has not shown such interest as warrants it in invoking the jurisdiction and power of a court of equity for injunctive relief.

■ It is well settled that a *citizen and taxpayer* of a municipal corporation, *as one of the incorporators,* may invoke the aid of a court of equity, "to prevent or avoid illegal corporate acts, whereby the burdens of taxation will be increased." New Orleans, Mobile & Chattanooga Railroad Company v. Dunn et al., 51 Ala. 128. Or, expressed in other words, "to prevent the abuse of corporate power and keep municipal corporations within subjection to the law." Wilkinson v. Henry, County Treasurer, 221 Ala. 254, 257, 128 So. 362, 363, 365, 70 A.L.R. 712; Coleman et al. v. Town of Eutaw et al. and Town of Eutaw et al. v. Coleman et al., 157 Ala. 327, 47 So. 703; Gillespie et al. v. Gibbs et al., 147 Ala. 449, 41 So. 868; Inge et al. v. Board of Public Works of Mobile, 135 Ala. 187, 33 So. 678, 93 Am.St.Rep. 20.

■ The principle underlying the right stressed in the decided cases is that the inhabitants of the municipality are the corporators, and that the governing boards are the agents and trustees of the corporation. Allen v. Intendant and Councilmen of La Fayette, 89 Ala. 641, 8 So.

30, 9 L.R.A. 497; City of Eufaula v. McNab, 67 Ala. 588, 42 Am.Rep. 118; Gillespie et al. v. Gibbs, supra.

■ The complainant does not fall within the stated category. It is not an inhabitant of the municipality, and the fact that it pays taxes on its property situated therein, and pays a license for the privilege of doing business under its franchise, without more does not show such interest as warrants the interference of a court of equity. Jones et al. v. Black et al., 48 Ala. 540; Alabama Power Company v. Ickes, Federal Emergency Adm'r, of Public Works, et al., 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Id., 67 App.D.C. 230, 91 F. 2d 303.

There is another phase of the case however, if sustainable, that would uphold the equity of the bill. If, as the bill asserts, the municipality can not engage in the business of establishing and maintaining a distribution system outside its corporate limits, without obtaining from the Alabama Public Service Commission a certificate of convenience and necessity, then the threatened competition of the municipality to the complainant's lawfully conducted business would be unlawful, although complainant is operating under a non-exclusive franchise. Alabama Power Co. v. Cullman County Electric Membership Corporation, 234 Ala. 396, 174 So. 866; Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483.

It is the contention of the appellant that when the respondent municipality undertakes to establish a system of distribution to serve other than its own inhabitants it becomes a public utility within the influence of Article 8 of Chapter 335, embracing §§ 9740–9824, of the Code of 1923, and is "subject to the regulatory and supervisory jurisdiction and authority of the Alabama Public Service Commission, in all respects as a privately owned and operated utility engaged in the same business, except as to its rates and service regulations," and can not acquire or construct the line and distribution system without obtaining a certificate of convenience and necessity, required by § 9795 of the Code.

The question presented in Culpepper v. Phenix City et al., 216 Ala. 318, 113 So. 56, 58, was whether or not the "additional power, authority and jurisdiction" conferred on the Alabama Public Service Commission embraced municipal corporations in any respect, and it was there held that municipal corporations were not within the influence of such power and jurisdiction. The court, pointing to the particular provisions of the statute, observed: "It is inconceivable that the Legislature could have intended, in the face of thes* plain and positive provisions, to have included municipal corporations among the utilities which are subjected in these respects to regulation and control by the Public Service Commission. Very clearly the utilities thus subjected are those only which are privately owned and operated, and not those owned and operated, or to be owned and operated, by a branch of the government itself, and for the financing of which special provision has been otherwise made."

■ The defendant municipality not being within the jurisdiction and power conferred on the Alabama Public Service Commission by said Article 8 of Chapter 335 of the Code—not within its influence —the statute conferred on said defendant no right detrimental to the business and property rights of the complainant, and, therefore, the question of denial to the complainant by said statute of the equal protection of the law under the 14th Amendment to the Constitution of the United States, U.S.C.A., is not presented.

■ Moreover, there is clearly a sound basis for classification, to include the one and exclude the other from the exercise of such power. The defendant municipality, by its nature and elements, is a non-profit producing governmental agency, and engages in proprietary enterprises for the purposes of serving its own inhabitants, and if its serves others outside its corporate limits, it must do so at the same rate it serves its own inhabitants. City of Montgomery v. Greene et al., 180 Ala. 322, 60 So. 900.

The complainant, on the other hand, is conducting the business for profit to its stockholders. Frost, doing business under the name of Mitchell Gin Company v. Corporation Commission of Oklahoma et al., 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483.

The appellant further insists that the defendant in seeking a loan of money to acquire or construct said power line and electrical distribution system, as well as the proposed acquisition and operation of said enterprise, is ultra vires the city's corporate authority, and therefor should be enjoined.

It is exceedingly doubtful whether the appellant has such legal interest in that question as authorizes it to invite judicial investigation. Leading authorities hold that "The legal interest which qualifies a complainant other than the State itself to sue in such a case is a pecuniary interest in preventing the defendant from doing an act where the injury alleged flows from its quality and character as a breach of some legal or equitable duty," to the party complaining. Alabama Power Co. v. Ickes, Federal Emergency Administrator of Public Works, et al., 302 U.S. 464, 482, 58 S.Ct. 300, 305, 82 L.Ed. 374. Cf. New Orleans, M. & T. R. Co. v. Ellerman, 105 U.S. 166, 26 L.Ed. 1015.

The insistence, however, is without merit. Section 2001 of the Code 1923, provides that: "Cities and towns shall have the right * * * to establish, purchase, maintain, and operate a gas or electric light works, and to contract for the furnishing of gas or electricity to the city or town *and surrounding territory*." [Italics supplied].

· Act No. 107, known as the "Carmichael Act," approved April 6, 1933, provides: "That any county, municipal corporation, city within this State is hereby authorized and empowered to acquire by purchase, construction, condemnation and/or otherwise and to maintain, extend, improve and/or operate electric light plants, power plants, power lines and electric distribution systems together with the extension and the appurtenances thereto and all of the property, tangible and intangible, and ·of like or different kind, to be used or useful in connection therewith, either within ·or without, or partly within and partly without, the corporate limits of such city ·or the boundaries of such county, under the provisions of this Act for the purpose ·of producing, obtaining, distributing, and/or furnishing an adequate supply of electricity for public, industrial, business, domestic, light, power and/or other consumption within, or partly within and partly without the corporate limits of such city ·or the boundaries of such county. Franchise for the supply of said commodities, ·or any one or more of them, to other municipalities and/or to the inhabitants, industries and/or businesses therein shall be included within the properties which any city or county may acquire under the provisions of this act, and such franchises may be acquired either from such other municipalities or from the owners of such franchises. All or any part of any existing electricity plant shall also be included in the properties which any city or county may acquire under the provisions of this act. Such city or county may acquire necessary or convenient rights of way within the city and without the city and within the County and without the County in order to reach any necessary or accessible source of power at a U. S. Government owned Power Dam, or otherwise." Gen. Acts 1933, Ex.Sess., p. 100.

These statutes speak for themselves, and it requires no argument or interpretation to show that the project of the defendant municipality is well within the power therein conferred.

In addition to these, the Walker Act, No. 155, approved June 26, 1935, cumulative in its effect, confirms the grant of such power. Gen.Acts 1935, p. 201, §§ 1 and 2.

The complainant shows no such interest as authorizes it to question the right of the defendant municipality to issue revenue bonds payable out of the revenue of the proposed system, and not a general obligation of the city, nor the regularity and validity of the election to authorize such issue. Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859; Alabama Power Co. v. Ickes, Federal Emergency Administrator, etc., supra.

The Hamner Act, No. 42, approved February 7, 1935, Gen.Acts 1935, p. 87, authorizing the organizing of "Power District," in no way impinges the powers conferred by the statutes above set out, and is not applicable to the case presented in this record.

The judgment here is that the bill is without equity, and the decree sustaining the demurrers and dismissing the bill is free from error.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.