In the Matter of a Proposed Extension of the Operations of Delaware Power & Light Company in Kent County.

(*August* 24, 1953.)

Carey, J., sitting.

*William Watson Harrington* and *James H. Hughes, III,* for appellant.

*William S. Potter* and *Richard F. Corroon* (of the firm of Berl, Potter and Anderson) for Delaware Power & Light Company.

150

Superior Court for Kent County, No. 53, C. A. 1953.

CAREY, J.:

Briefly stated, this appeal presents three questions for decision: (1) Does a municipally owned utility have standing to complain before the Commission of an encroachment by a privately owned utility upon territory already served by the former? (2) Must a privately owned utility obtain a certificate of convenience and necessity before extending its services into a territory already served by a municipally owned utility, but outside the municipal limits? (3) Was the Commission justified in dismissing the present complaint without any hearing or investigation into the facts, where the petition alleged only that an extension is "proposed" and does not charge that it has been begun? A fourth point raised by Delaware Power & Light Company, based solely upon the fact that Dover's charter does not create an exclusive franchise, need not be noticed, since the appellant agrees with the contention made.

The appellee argues that the City of Dover is not a "public utility" and therefore has no standing to object under Section 162 to the alleged proposed extension. Its argument is based, not so much upon the statute as it appears in the present *Code*, but primarily upon the statute as it existed prior to the adoption of that *Code*, towit, 47 *Del. Laws*, Ch. 254, as amended by 48 *Delaware Laws* c. 371, p. 1047. As therein contained, Section 2 read as follows:

"The Public Service Commission shall have general supervision and regulation of all public utilities and also over their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Act. The term 'public utility' is hereby defined to include every individual, copartnership, association, corporation, joint stock company, agency or department of the State, or any association of individuals engaged in the prosecution in common of a productive enterprise (commonly called a 'Cooperative'), their lessees, trustees, or receivers appointed by any court whatsoever, that now operates or hereafter may oper-

ate, within the State of Delaware, any railroad, street railway, traction railway, motor bus, electric trackless trolley coach, taxicab, automobile truck, express, steam, manufactured gas, natural gas, electric light, heat, power, water, telephone or telegraph service, system, plant or equipment, for public use, but shall have no supervision or regulation over any public utility or over the property, property rights, equipment, facilities or franchises of any public utility that is municipally owned."

It will be observed that this section of the original Act first of all sets out the jurisdiction of the Commission. It then defines the term "public utilities" and in the very same sentence, after a comma, says that the Commission shall have no supervision or regulation over any municipally owned public utility. The Code Commission, without suggesting any intent to change the meaning of the Act, altered the arrangement of the provisions of Section 2. The first sentence thereof was carried separately into the *Code* as Section 121; the definition of "public utility" was carried into Section 101 under the heading "definitions"; that part of the sentence dealing with municipally owned utilities was made a separate section (122). It is said that we must turn to the Act as originally drawn because the Code Commission had no authority to alter the substantive meaning of the laws. Whether this argument is valid in the light of the case of *Monacelli v. Grimes, Del.*, 99 *A.* 2d 255 need not be passed upon here. Counsel for the appellant place no reliance upon the change in arrangement by the Code Commission, but contend that the City of Dover is a public utility within the meaning of the last sentence of Section 162, even under the original Act, and that it is therefore entitled to complain of the proposed extension. The following comments on this point are accordingly based upon the statute as originally passed.

I agree with appellant's contention. The Section under consideration did more than merely define "public utility"; it also defined the jurisdiction of the Commission. It starts off by giving the Commission general supervision of all public utilities for purposes of the Act. After defining the term, it then excepts mu-

nicipally owned utilities from the powers given in the first sentence. Thus, despite its unusual arrangement, the latter part of the second sentence actually limits the first sentence. The language used, in my opinion, permits no other interpretation. In this respect it differs from that found in *Springfield Gas & Electric Co. v. City of Springfield*, 292 *Ill.* 236, 126 *N. E.* 739, 18 *A. L. R.* 929. The Illinois statute, *S. H. A.* ch. 111⅔, §§ 10.3, 10.10, 10.11, defined the term as meaning and including every corporation, etc., except such as may be owned or operated by any municipality. Moreover, it defined the words "company" and "corporation" as including practically every known type of organization, except "municipal corporations". In short, they were excluded entirely from the contemplation of the statute in that they were excepted from the very definition of the term "public utility". In contrast, our Act does not exclude a municipality in the definition but simply makes it plain that the Commission has no right of supervision or regulation of such a utility.

▮ As to the first question presented, therefore, my conclusion is that the City of Dover is a public utility entitled under the last sentence of Section 162 to make a complaint to the Commission when its interest would be adversely affected by a proposed extension of the facilities of another utility.

▮ Next, the appellee argues that a certificate of convenience and necessity is not required in this instance because the new territory is contiguous to a territory already served by Delaware Power & Light and not heretofore served by a public utility of like character. I am urged to take judical notice that Delaware Power & Light distributes electricity throughout most of Kent County and that the Air Base is contiguous to the tritritory already served by it. It is then suggested that this territory is not now served by "a public utility of like character", because Dover is not a public utility of "like character". It is argued that Section 162 applies only to regulated utilities and that the words "like character" refer to another utility which is subject to regulation.

Again I must disagree. Having in mind the purposes of the Act, and particularly the reasons for requiring certificates, I consider that the Legislature did not use these words to refer simply to regulated utilities. Obviously, what the section is designed to do is to prevent one water company, for example, from entering into direct competition with another water company without first obtaining the consent of the Commission thereto. To define the words "like character" in the manner suggested by appellee would be to ignore the aims and the objects of the entire statute, and especially the purpose underlying this particular section.

I am persuaded that the foregoing interpretation is correct even though it leads to the rather anomalous and seemingly unfair result that an unregulated utility is free to invade territory of a regulated utility, whereas the latter has no like privilege as against the former. We may venture the guess that, in exempting municipalities from regulation, the Legislature had primarily in mind those cities and towns which supply service only to their own inhabitants and perhaps a few nearby consumers. Whether it overlooked the comparatively rare situation such as the present one can only be a matter of surmise. Whatever may be the wisest policy cannot be determined by the Courts but must be left to the Legislature unless, of course, some constitutional question should be presented.

The appellee's final argument is that the complaint filed with the Commission shows on its face that it was prematurely filed. The complaint shows that Delaware Power & Light proposes to furnish power to the base by means of a line *to be constructed,* the exact *proposed* location of which is at this time unknown to the complainant. It is pointed out that the language shows that Delaware Power & Light had not even begun the ·extension of its lines and it is argued that Section 162 imposes the requirement of a certificate only upon a utility which has begun an extension. It is suggested that the words "the proposed extension" as used in the last sentence of Section 162 means one that has been begun but not yet completed.

Before considering this argument with particularity, it is well to mention one or two other parts of the Act. Section 183 authorizes the Commission to adopt rules of practice and procedure and provides that the Commission shall not be bound by the technical rules of evidence. It directs the Commission to keep a full and complete record of all proceedings in any formal hearing. Paragraph (b) provides as follows:

"After the conclusion of the hearing, the Commission shall make and file its findings with its opinion, if any, and its order thereon. Its findings shall be in sufficient detail to enable the court on appeal to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence."

Section 192 provides for appeals to this Court. Paragraph (b) provides in part as follows:

"Upon every appeal the cause shall be determined by the Court from the record (which shall include a typewritten copy of the evidence and of the findings and order and opinion, if any, of the Commission) without a jury, and the court may affirm, modify or revise the order of the Commission, in whole or in part, or may remand the cause to the Commission for rehearing in whole or in part."

Section 193 states that the filing of an appeal shall in no case supersede or stay the Commission's order, unless the Superior Court so directs.

From the foregoing provisions, it will be seen that this Court must base its rulings upon the record sent up and cannot take cognizance of any facts not in the record, save those which may be properly within the scope of judicial notice. The present record consists only of the original complaint, the Commission's opinion and its order. The allegations of the complaint, not having been denied or found incorrect, must be accepted as true. It charges that Delaware Power & Light proposes to furnish power to the Air Base, but has not applied for a certificate.

The sole reason given for dismissal is that Delaware Power & Light has not requested a certificate. There is no information whatever before this Court to indicate the status of the plans of Delaware Power & Light on March 5, 1953, which was the date of the order; nor is there anything to indicate the present status of those plans. No stay was ordered or even requested and it is entirely possible, and perhaps probable, that the situation today may be much further advanced than it was in March.

■ Under Section 162, a utility may not begin the extension of its business or operation without first obtaining the necessary certificate; in other words, it must be obtained *before*, not *after*, the extension is begun. The Act clearly does not intend that the utility make what may prove to be a wasted expenditure by starting the construction work before the Commission will entertain its application for a certificate.

The word "proposed" has a number of meanings. Its definition in any given case depends upon the context. In the present case, its use in the last sentence of Section 162 must be connected with the preceding sentences. When so read, it would seem that a complaining utility, such as the city of Dover in this case, may file its complaint at the same stage of the proceedings when the extending utility could apply for a certificate, i. e., it is not bound to wait until construction work has been started. It would also seem, on the other hand, that the complaining utility would undoubtedly have to show some facts to justify the Commission in believing that construction was about to start or at least that a definite settled intention had been formed. So long as the scheme is only in the planning stage, the complaint would seem to be premature.

The foregoing thoughts as to precisely when a complaint may be filed by an objecting utility are perhaps beyond the scope of the needs of this case. As indicated above, this Court has no idea whatever of the extent to which the matter has progressed. Whether this particular complaint was premature, or whether it would be premature if filed today, depends upon

facts which can only be developed through a hearing or an investigation by the Commission. In view of the Court's ignorance of the facts, it is better not to attempt to lay down an all-inclusive rule at this time, but to let that rule be crystallized in the light of the facts of future cases.

For purposes of this case, therefore, it will suffice to say two things: (1) the Commission was in error in dismissing the complaint for the sole reason that Delaware Power & Light had not requested a certificate, even though construction had not actually begun; (2) the Commission should have inquired into the matter, at least to the point of finding out the extent to which the plans had progressed, and should have made its finding on that point a part of the record. Had this been done, this Court would have had something tangible upon which it could say whether the complaint was premature.

The record will be remanded with appropriate directions in accordance with the views herein expressed. An order to this effect may be submitted.