## 17140

PEE DEE ELECTRIC COOPERATIVE, INC., Appellant, v. THE PUBLIC SERVICE COMMISSION, CLYDE F. BOLAND, WINCHESTER SMITH, HUGH C. BROWN, CHARLES A. RICE, J. LOUIS MOSS, JOHN J. SNOW and EDWARD WIMBERLY, Individually and Collectively as Members of The Public Service Commission; Carolina Power & Light Company and Jefferson Standard Broadcasting Company, Respondents.

(92 S. E. (2d) 171)

Messrs. *Melvin Hyman*, *Sam Rogol*, *James P. Mozingo*, *III*, and *John L. Nettles*, all of Darlington, *for Appellant*,

*Messrs. Thomas & Lumpkin,* of Columbia, *for Respond-ent, Jefferson Standard Broadcasting Company, and Will-cox, Hardee, Houck & Palmer,* of Florence, and *A. Y. Arl-edge,* of Raleigh, N. C., *for Respondent, Carolina Power & Light Company,*

*Messrs Dorsey Lybrand,* of Aiken, *Markeley Dennis,* of Moncks Corner, *Harry L. Cline,* of Gaffney, *J. Carl Kearse,* of Bamberg, *James E. Leppard,* of Chesterfield, *Marion B. Holman,* of Batesburg, *Randolph Murdaugh,* of Hampton, and *Philip C. Stoll,* of Kingstree, *for Aiken Electric Coop-erative, Inc., Lynches River Electric Cooperatives, Inc., Pal-metto Electric Cooperative, Inc., Berkeley Electric Coopera-tive, Inc., Broad River Electric Cooperative, Inc., Edisto Electric Cooperative, Inc., Mid-Carolina Electric Coopera-*

*tive, Inc., and Santee Electric Cooperative, Inc., as Amici Curae.*

*Messrs. T. C. Callison, Attorney General,* and *Irvine F. Belser, General Counsel for The Public Service Commission,* of Columbia, *for the South Carolina Public Service Commission,*

April 3, 1956.

LEGGE, Justice.

This appeal is from an order of the Court of Common Pleas for Richland County affirming the action of the Public Service Commission in denying appellant's petition to enjoin the respondent Carolina Power & Light Company from extending its electric power line from the City of Florence to serve a television station of the respondent Jefferson Standard Broadcasting Company. Pending the appeal, Aiken Electric Cooperative, Lynches River Electric Cooperative, Palmetto Electric Cooperative, Berkeley Electric Cooperative, Broad River Electric Cooperative, Edisto Electric Cooperative, Mid-Carolina Electric Cooperative and Santee Electric Cooperative were granted permission to file a brief *amici curiae;* and such brief has been filed and fully considered.

On December 28, 1953, Jefferson Standard Broadcasting Company (hereinafter referred to as the broadcasting com-

pany), which was in process of erecting a television broadcasting station on the Cashua Ferry Road some four and a half miles northeast of the city of Florence, applied to Carolina Power & Light Company (hereinafter referred to as the power company) for the supply of electricity needed for the operation of the station, intially 400 kw of three-phase current; and thereafter on January 14, 1954, the said parties entered into an agreement for such service. Thereupon the power company commenced construction of the necessary 22 kv three-phase transmission line from its Florence substation to the site of the broadcasting station, a distance of about four and a half miles. On February 2, 1954, before this line had been completed, appellant petitioned the Public Service Commission for an order requiring the power company to cease and desist from constructing it; and upon this petition the Public Service Commission issued, on February 4, 1954, its order requiring the power company to show cause before it on February 18, 1954, why the order prayed for should not be issued. The power company having responded to the show cause order, and the broadcasting company having intervened in opposition to the petition, the matter was heard before the Commission on February 18, 1954, and thereafter the Commission issued its order dated February 23, 1954, denying the petition; and by order dated March 16, 1954, it refused petitioner's request for rehearing.·

On April 14, 1954, appellant brought the present action to review and set aside the orders of the Commission before mentioned. The case came on for trial before the Honorable J. Henry Johnson, Presiding Judge, at the November, 1954, term, and by his order of November 24, 1954, from which this appeal is taken, he found that all pertinent facts found by the Commission were amply supported by the evidence before it and that the questioned orders of the Commission were free from error of law.

It appears undisputed that while appellant had two single-phrase 7.2 kv lines within a mile of the site of the broadcasting station, the service required could not be afforded there-

by, nor could such lines be converted to three-phase wire without rewiring; and that the nearest source of the necessary three-phase power available to appellant was its Darlington substation, distant some fourteen miles. Appellant was therefore not equipped to supply the required service and could do so only by constructing a three-phase line from its Darlington substation, at a cost, according to its testimony, of approximately $91,343.00. On the other hand, the evidence before the Commission was to the effect that the power company's source of 22 kv three-phase power nearest the site of the broadcasting station was its substation at Florence, some four and a half miles distant; and that it had, prior to the hearing, completed construction of the transmission line before mentioned from this source to the broadcasting station. There was also testimony to the effect that tied into the 110 kv bus at the power company's Florence substation were three 110 kv lines coming respectively from its substations at Hartsville and Marion and the Pinopolis plant of South Carolina Public Service Authority; that these lines together fed power into the Florence bus; and that in the event of outage on less than all three of these feeder lines the remaining lines or line would automatically keep the Florence bus energized. There was further testimony that in the event of failure of all three of these automatic sources, the power company's line to the broadcasting station could be served, by manual switching, from 22 kv lines at Darlington and Marion, by-passing the 110 kv substations at those points. According to the testimony of its Superintendent of Power, the initial sources of power available to the power company for delivery to its Florence substation were, in addition to its connections with South Carolina Public Service Authority, Virginia Electric & Power Company, Appalachian Electric Power Company, Duke Power Company and South Carolina Electric & Gas Company, its own hydro plants at Blewett and Tillery, and its steam plants at Lumberton, Cape Fear and Goldsboro, North Carolina; and a 220,000 kw steam plant, under construction at Wilmington,

North Carolina, would be in operation, and a source of power to its system in South Carolina, by the summer of 1954. There was testimony on the part of appellant that at the time of the hearing its Darlington substation obtained its power from the power company, but that appellant had contracted with Central Electric Cooperative for service at a new substation on the latter's Darlington Marion Line; that Central obtains its power from the South Carolina Public Service Authority's Pinopolis plant and that of Clark's Hill Authority's Savannah River plant; and that, upon appellant's entry into the Central Cooperative system, it would be able to supply the required power not only from the Darlington substation, but also from a new substation proposed to be constructed some two and a half miles south of the broadcasting station.

In the light of this testimony, the Commission found as matters of fact, among others, the following:

1. That when the broadcasting company selected the site for its station there were no electric lines in place from which electricity of the quantity and character necessary to operate the broadcasting station could be supplied.

2. That at no time up to and including the date of the hearing was any electrical utility other than the power company supplying service similar to that to be supplied by the power company over the line which it had constructed pursuant to its contract with the broadcasting company.

3. That the public interest would be better served if the broadcasting station were supplied by the power company, rather than by appellant, because: (a) the former had many more generating sources and substations then in place and in use than appellant then had or would have after constructing the lines and substations which its testimony indicated were contemplated, and the power company was thus in position to insure a higher degree of continuity of service; and (b) the power company, unlike appellant, was subject to the regulatory powers vested in the Commission with respect to rates and quality and continuity of service.

4. That the extension of the power company's line to the broadcasting station was into territory "not receiving similar service from another electrical utility", and therefore no certificate of convenience and necessity was required.

Appellant's Exception No. 1, charging error on the part of the trial judge in refusing its motion for a jury trial, has been abandoned. The remaining exceptions charge error:

1. In holding that the power company was not required to obtain a certificate of convenience and necessity before extending its service to the broadcasting station;

2. In holding that appellant was not already in the territory and capable of rendering the service required by the broadcasting company; and

3. In not holding that the Commission's orders were arbitrary, capricious, and without support in the evidence.

Pertinent to the issues before the Commission and the lower court, and here, are the following provisions of the 1952 Code:

Section 24-61: "When ordered by the Commission after due hearing any electrical utility may be required to establish, construct, maintain and operate any reasonable extension of its existing facilities. If any such extension, however, will interfere with the service or system of any other electrical utility the Commission may on complaint and after hearing either order the discontinuance of such extension or prescribe such terms and conditions with respect thereto as may be just and reasonable."

Section 24-63: "No electrical utility * * * shall hereafter begin the construction or operation of any electrical utility plant or system or of any extension thereof, except those ordered by the Commission under the provisions of § 24-61, without first obtaining from the Commission a certificate that public convenience and necessity require or will require such construction or operation. But * * * this section shall not be construed to require any such electrical utility to secure a certificate * * * (b) for an extension within or to ter-

ritory already served by it, necessary in the ordinary course of its business, or (c) for an extension into territory contiguous to that already occupied by it and not receiving similar service from another electrical utility."

Section 24-67: "Whenever an electrical utility * * * is engaged or is about to engage in construction or operation without having secured a certificate of public convenience and necessity as required by the provisions of this chapter, any interested person, corporation or municipality may file a complaint with the Commission. The Commission may, with or without notice, make its order requiring the electrical utility complained of to cease and desist from such construction or operation until the Commission makes and files its decision on such complaint or until the further order of the Commission. The Commission may after hearing make such order and prescribe such terms and conditions in harmony with this chapter as are just and reasonable."

In our consideration of the issues here presented the governing principle, well settled by many decisions of this court, is that orders of the Public Service Commission issued under the powers and authority vested in it have the force and effect of law; that the Commission's findings of fact are presumptively correct and its orders presumptively reasonable and valid; that this court cannot substitute its judgment for that of the Commission upon a question as to which there is room for a difference of intelligent opinion; and that, therefore, an order of the Commission such as is here involved will not be set aside except upon a convincing showing that it is without evidence to support it or that it embodies arbitrary or capricious action as a matter of law. *Atlantic Coast Line R. Co. v. Public Service Commission,* 226 S. C. 136, 84 S. E. (2d) 132.

In its order of February 23, 1954, the Commission found as a matter of fact that the extension of the power company's line from its Florence substation to the site of the broadcasting station was into territory not receiving similar service from another electrical utility, and held therefore, because

of the provision of Section 24-63, that no certificate of convenience and necessity was required. Judge Johnson, in his order of November 24, 1954, held that the site might well be considered to be in territory already served by the power company, and that even if it were considered as in contiguous territory no certificate was necessary because such territory was not shown to be "receiving similar service from another electrical utility". It is noted that the Commission did not find as a fact that the broadcasting station site was in territory already served by the power company, but did find, by necessary implication, that it was in contiguous territory within the purview of Section 24-63; and that Judge Johnson, in discussing the Commission's ruling with respect to the certificate, took it as having been established by the evidence that the site was either in territory already occupied by the power company, or in territory contiguous thereto.

Appellant earnestly contends; however; that these ▪ factual findings, are not supported by the evidence, and that the power company was required under the statute to obtain a certificate of convenience and necessity because the territory in which the broadcasting station site is located: (a) was not "contiguous" to the territory "occupied" by the power company, being four and a half miles from the company's nearest line; and (b) was receiving "similar service" from appellant. But the issue here suggested becomes academic in the light of the Commission's order of February 23, 1954, denying the relief sought by appellant, and requiring the power company to perform its contract with the broadcasting company; for that order was, in effect, one "after due hearing", requiring the power company to extend its facilities to supply the broadcasting company, as prescribed by Section 24-61, and such extension was therefore excepted, by the express provisions of Section 24-63, from the requirement that a certificate of convenience and necessity be first obtained.

Appellant next contends that the lower court erred in ██ holding that it was not already in the territory and capable of rendering the service required by the

broadcasting company. The evidence before the Commission showed, as we have stated, that although two of appellant's lines ran within a mile of the broadcasting station site, they were single-phase wires incapable of carrying the required current, delivery of which to the broadcasting station would have necessitated the extension of three-phase wire from appellants Darlington substation fourteen miles distant. Appellant's contention is, in substance, that because of the propinquity of its single-phase line to the broadcasting station, public policy required that the Commission deny the power company permission to extend its three-phase line to the site until appellant had been given the opportunity to construct the necessary extension from Darlington and demonstrate its ability to give the required service. But, subject to express statutory requirements, the State has entrusted the execution of its public policy in such matters to the sound discretion of the Commission; and, as we have seen, the Commission in the instant case took into consideration not only the propinquity of the power company's 110 kv substation at Florence and the fact that the extension of the three-phase line to the site had been completed prior to the hearing, but also the comparative sources of electric energy available to the competing utilities, their probable ability, respectively, to maintain continuity of service to the broadcasting station, and the further fact that the power company was, and would likely continue to be, subject to the regulatory control of the Commission, which appellant was not,—and in the light of these considerations concluded that it would better serve the public interest by requiring the power company to perform its contract with the broadcasting company for the supply of electricity to the latter's station.

It is true, of course, as was pointed out in *Bookhart v. Central Electric Power Cooperative,* 219 S. C. 414, 65 S. E. (2d) 781, that cooperatives are not immune from the police power and may be subjected to regulatory legislation; but this fact, of which the Commission was undoubtedly aware, affords no substantial basis for holding

that the Commission should have disregarded the non-existence of regulatory control over appellant comparable to that to which the power company is presently subject.

In support of its contention that the Commission's orders were arbitrary and capricious, appellant urges that public policy requires that private utilities be not allowed to duplicate the power lines of the cooperatives or to invade territory already served, as here, by the latter. But the premise upon which this argument is founded, namely: that appellant was already supplying, within the area in question, electric service similar to that required by the broadcasting company, is contrary to the fact as found by the Commission and amply supported by the evidence. The record before us does not warrant the conclusion that the orders of the Commission, affirmed by the learned circuit judge, were arbitrary, capricious, or without evidentiary support.

All exceptions have been fully considered and are overruled, and the judgment of the lower court is accordingly affirmed.

STUKES, C. J., OXNER, J., and T. B. GRENEKER, Acting Associate Justice, concur.

J. WOODROW LEWIS, Acting Associate Justice (dissenting).

I cannot agree with the legal proposition that Rural Electric Cooperatives are without remedy to prevent encroachment by other electric utilities into territory served by the Cooperatives. On no other basis, in my opinion, under the facts of this case, can the decision of the Public Service Commission and the lower court be sustained. I respectfully dissent.