118 So.2d 907

### ALABAMA POWER COMPANY
v.
### SOUTHERN PINE ELECTRIC COOPERATIVE.

3 Div. 848.

Supreme Court of Alabama.

Oct. 29, 1959.

Rehearing Denied April 7, 1960.

Jones & Jones, Evergreen, Brooks & Garrett, Brewton, Martin & Blakey, Carey J. Chitwood and Harold Williams, Birmingham, for appellant.

Thos. E. Milligan, Brewton, J. M. Williams, Jr., and Rushton, Stakely & Johnston, Montgomery, Edwin C. Page, Jr., Evergreen, and Jos. C. Swidler, Nashville, Tenn., for appellee.

PER CURIAM.

The causative facts of this litigation and the decree under review are fully described in the dissenting opinion of Justice SIMPSON and need not be included herein.

In disagreeing with the decree of the trial court it is sufficient for us to say that we do not believe that the provisions of § 332, Title 48, Code of 1940, should be now construed by the courts as requiring certificates of public convenience and necessity in order to engage in the activities of the kind shown by this record to have been carried out by the Alabama Power Company. We take this position because the record shows that the Alabama Public Service Commission has never acted to require such a certificate even though utilities including the Alabama Power Company have in the past filed with the Commission reports showing similar activities.

In view of the widespread activities of the kind here involved without the issuance of certificates of convenience and necessity by the Alabama Public Service Commission, we are of the opinion that if such certificates are now to be required the Legislature should clearly so provide.

We conclude, therefore, that the decree of the trial court should be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

SIMPSON, Justice (dissenting).

Southern Pine Electric Cooperative, Inc., hereinafter referred to as "Coop.", sought an injunction against Alabama Power Co., hereinafter referred to as "Power Co.", to prevent the construction or operation of an electric line for the transmission of electric energy to a limestone crushing plant on the ground that the Power Co. had not obtained from the Alabama Public Service Commission, hereinafter referred to as "A.P.S.C.", a certificate of convenience and necessity for the construction of the said line as provided for in § 332, Tit. 48, Ala.Code 1940. The evidence was heard ore tenus by the trial court and the court found that the construction of the line in question would result in the duplication of electrical facilities in territory theretofore and currently being adequately served by the Coop. The trial court enjoined the Power Co. from operating the line until such time as it obtained from the A.P.S.C. a certificate of convenience and necessity for the construction and operation of this line. From this decree the Power Co. has appealed.

The evidence shows that no electrical service of any type was being rendered at the plant site proper at the time the suit was filed, but that the Coop. did maintain a one-phase line within 1,625 to 1,665 feet of the site of the plant. The distance from the Power Co.'s closest distribution line to the plant site was approximately 4½ miles. The Coop. also maintained a three-phase electrical service line 5 to 5½ miles from the plant. The territory into which the line in question was constructed by the Power Co. was, and is presently, receiving its electric energy from the Coop. It also ap-

pears that the Coop. was adequately serving all users of electricity who had requested it in such area and was "ready, willing and able" to serve the customer in question.

The cost to the Power Co. of building the extension to the plant was approximately $18,000; the anticipated annual revenue therefrom was $6,000. The construction budget for 1957 of the Power Co. was approximately $40,000,000. It further appears that the Power Co. proposes to build a substation for the purpose of serving the area in question. And while there was testimony that the proposed substation was not necessitated by the additional plant load, the evidence also shows that the Power Co. could not serve the plant its full load until it built the substation. The cost of building the substation was estimated to be between $25,000 and $50,000. The evidence shows that the Power Co. constructed this line without first having made application for or acquiring a certificate of convenience and necessity from the A.P. S.C. At the time the suit was filed, the Power Co. was engaged in the construction, and continued to construct, the said line until it was completed during the course of the litigation.

The trial court found that the construction in question was the property or facility for the transmission and delivery of electricity and that the said addition in the territory and to the customers served under the circumstances as shown by the evidence was not an ordinary extension of the existing system of the Power Co. in the usual course of its business as contemplated by § 332, Tit. 48, Ala.Code 1940, and as heretofore observed, enjoined the Power Co. from operating the line until such time as it obtained a certificate of convenience and necessity from the A.P.S.C.

Section 332, Tit. 48, Ala.Code 1940 (Public Service Commission Act) provides, in part, as follows:

"No plant, property or facility for the production, transmission, delivery, or furnishing of * * * electricity * * * shall be constructed except ordinary extensions of existing systems in the usual course of business, * * * until written application is first made to the commission for the issuance of a certificate of convenience and necessity, and the issuance by the commission of such certificate. Upon the filing of any such application, and after a public hearing of all parties interested, the commission may, or may not in its discretion, issue such a certificate of convenience and necessity, and if issued, may prescribe such conditions upon the issuance as it may deem advisable."

The purpose underlying the requiring of a certificate of convenience and necessity for extensions other than ordinary extensions of an existing system in the usual course of business is to withdraw the unrestricted right of competition between utilities rendering service of the same kind and to prevent waste incident to a duplication of facilities. Re Cole, P.U.R.1921 C., pp. 385, 391; People ex rel. New York Edison Co. v. Willcox, 207 N.Y. 86, 100 N.E. 705, 708, 45 L.R.A.,N.S., 629; Biennial Report, Attorney Gen. of Ala. 1922–24, p. 211; 73 C.J.S. Public Utilities § 42, p. 1099; see also State Public Utilities Commission ex rel. Pike County Telephone Co. v. Noble, 275 Ill. 121, 113 N.E. 910; In re Delaware Power & Light Co., 1953, 9 Terry 149, 48 Del. 149, 99 A.2d 270.

Consonant with the purpose of the statute requiring a certificate of convenience and necessity, the interpretation of the phrase "ordinary extension of an existing system in the usual course of business" by special Assistant Attorney General Hugh White, (later president of A.P.S.C.), Biennial Report, Attorney Gen. of Ala. 1922–24, p. 211, impresses me as correct and should be followed. Thus, where, as here, the property or facility for the transmission, delivery, or furnishing of electricity involves the extension by the utility of the system into a community or territory not then served by said utility and where its

purpose is not simply to enable the said utility to maintain good service or to provide better service for its existing system and customers, the extension will not constitute an ordinary extension of an existing system in the usual course of business and a certificate of convenience and necessity is required. This is particularly true where, as here, it appears that the community or territory is already being rendered service by another utility. Biennial Report, Attorney Gen. of Ala., 1922–24, p. 211; Chicago & W. T. R. Co. v. Metropolitan, etc. R. R. Co., P.U.R.1923D., p. 164; State Public Utilities Commission ex rel. Pike County Telephone Co. v. Noble, supra; see also Public Service Commission v. Kansas City Power & Light Co., 325 Mo. 1217, 31 S.W.2d 67; Ford P. Hall, "Certificate of Convenience and Necessity", 28 Mich.L.Rev. 276, 300.

The said opinion of the Attorney General very properly observed that it is impossible to establish a fixed and certain principle to govern all cases, or as to when an operation will come within the extension proviso, but that each case must be governed by its own particular facts and circumstances.

Appellant cites Sheridan County Electric Co-op. v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 P.2d 742 in support of its position that the line in question is an ordinary extension of an existing system in the usual course of business. The question of what is meant by such an extension was not considered by the court in the Sheridan County case, supra, nor does it appear from the facts of the case whether a certificate of convenience and necessity was required, nor does it appear that the company was operating with or without a certificate. While not necessarily approving all that was written in Pee Dee Electric Cooperative v. Public Service Commission, 229 S.C. 155, 92 S.E.2d 171, also cited by appellant, I do not regard the holding therein as contrary to the foregoing interpretation of what constitutes an ordinary extension of an existing system in the usual course of business. In the Pee Dee case, supra, the Power Co. was required by the Public Service Commission, after a hearing, to extend its facilities so as to supply to the customer in question; such extension was expressly excepted by the So. Carolina statute from the requirement that a certificate of convenience and necessity be first obtained. The question with which the Supreme Court of So. Carolina was concerned and one which is not herein presented, was whether the order of the Public Service Commission directing the Power Co. to supply electricity to the customer was arbitrary, capricious or without evidentiary support.

The question of instant concern is not the right vel non of the Power Co. to enter the territory in question, rather the question is whether they must obtain a certificate of convenience and necessity as a prerequisite to the entering in said territory. Clearly, to my mind, the line is not an ordinary extension of an existing system in the usual course of business in that it involved the extension of the system into a community or territory not then served by the Power Co.; the purpose of the extension was not to enable the Power Co. to maintain good service or to provide better service for its existing system and consumers for the community or territory was already being rendered service by the Coop. The Power Co., therefore, in my view, should obtain a certificate of convenience and necessity from the A.P.S.C. in order to make such extension lawful, within the meaning of said § 332, supra, of the Code. No useful purpose will be served by setting out all of the evidence which supports my conclusion. The following pertinent facts will, however, be mentioned: One Wallis and Jackson established a limestone crushing plant north of Castleberry, Alabama for the manufacture of agricultural lime. This plant is located one mile east of U. S. Highway 31 between Castleberry and Fairview, Alabama. With respect to the electrical facilities of the Coop. in this area, it appears that it maintained a distribution line extending from

Fairview down U. S. Highway 31 to the farm of one Clark. An extension of this line was to a point which is within 1,625 to 1,665 feet from the plant site. This is a single, or one-phase, line. The Coop. also has another line located approximately one mile east of the plant site. It also appears that the Power Co. has a distribution line extending north on U. S. Highway 31 from Castleberry to a point which is approximately 4½ miles from the plant site. The Power Co. also maintains a 110 K V transmission line at a distance of 1½ miles from the plant site. The electrical requirements would not, however, be served from the transmission line. In order for the Coop. to render service to the new plant, it would be necessary to convert its line to three-phase from Fairview, a distance of approximately 5½ miles. The Power Co. has a three-phase line located approximately 4½ miles from the plant site, but the Power Co. could not serve the plant its full load until it also built the substation previously mentioned. This construction certainly could not be considered "an ordinary extension of an existing system in the usual course of business".

The Power Co. seems to take the position that the restrictive language of the statute exempts the activity herein considered from its operation because distribution lines are comprehended within the extension proviso and that only transmission lines into new areas require a certificate of convenience and necessity from the A.P.S.C. within the meaning of said § 332; that the Power Co. has never procured a certificate of convenience and necessity for the extension of its distribution systems; that the A.P.S.C. has never required it, and that hence a long-standing administrative construction reinforces its position that such a certificate is not necessary in the instant case. This seems to be the view of some of the justices of the majority.

In the first place, no administrative construction can avail if it conflicts with the plain wording of the statute, as we think is the case here. This for the reason that the

statute would be completely emasculated if such a position was sustained. Secondly, such position is contrary to the Attorney General's opinion, supra, which presumably the A.P.S.C. has not questioned for years. Thirdly, such position is against the general trend of authorities elsewhere. And, lastly, the mere fact that no competitor up to now is shown to have contested the right of the Power Co. to extend its distribution systems without such a certificate because the mere fact of inaction or acquiescence by the A.P.S.C. could not rise to the dignity of the administrative approval of the Power Co.'s conduct. In fact, we dare say that due to the manifold contested issues before the A.P.S.C., it would never act on such matters which are merely filed with it unless some issue was brought before them by some interested party, as was done in the case at bar before the Circuit Court.

It is also clear that the Southern Pine Electric Cooperative, Inc., a cooperative, organized under the provisions of Tit. 18, Chapter 3, Ala.Code 1940, has the right to enjoin the construction or operation of an extension of a facility for the transmission of electricity by the Alabama Power Co., a public utility, where the extension was made without authority of law, that is, without obtaining a certificate of convenience and necessity therefor. In Alabama Power Co. v. Cullman County Electric Membership Corporation, 234 Ala. 396, 174 So. 866, 867, the Power Co. sought to enjoin the Cullman County Electric Membership Corp. from engaging in the electric utility business within the area in which the Power Co. had a permit to serve a like business to the public. The claim was that the Membership Corp. had no certificate of convenience and necessity. "Appellant", wrote the court, "invokes the rule stated, as follows, in Springfield Gas & Electric Co. v. [City of] Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929 (and approved in Frost v. Corporation Comm., 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483): 'A private corporation lawfully operating a public utility may have an injunction

against another private corporation operating without authority of law a similar utility which competes with and injures the former's business.' " This court in the Cullman County Electric Membership Corp. case, supra, also held that an electric membership corporation created under the authority of what is now Tit. 18, Chapter 2, Ala.Code 1940, was a public electric utility but was exempt from the requirement of obtaining a certificate of convenience and necessity.

Southern Pine Electric Cooperative, Inc., appellee, in the case at bar, was organized and operates under the authority of Tit. 18, Chapter 3, Ala.Code 1940. Section 32 of Tit. 18 provides that "Cooperative, non-profit, membership corporations may be organized under this chapter for the purpose of supplying electric energy and promoting and extending the use thereof * * *". The powers of a cooperative are enumerated in § 33, Tit. 18, and include the following:

> "To sue and be sued * * *; to generate, manufacture, purchase, acquire, and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten percent of the number of its members; * * * to construct, maintain, and operate electric transmission and distribution lines along, upon, under, and across all public thoroughfares, including * * * all roads, highways, * * * and upon, under, and across all publicly-owned lands; provided * * * that the respective authorities having jurisdiction thereof shall consent thereto; to exercise the power of eminent domain * * *."

Many of the provisions of Tit. 18, Chapter 2 relating to the purpose, powers and limitations of electric membership corporations and upon which the court in the Cullman County case, supra, based its decision that an electric membership corporation is a public utility, are also found in Tit. 18, Chapter 3 and are applicable to electric cooperatives. Thus it appears that both are non-profit; their purpose is the same; they each have the right of eminent domain; there is no limitation nor restriction on the right of any person to become a member and consumer of their service; neither can issue bonds without a permit from the department of finance, and each of them has the right to construct works across or along the public highways and streets. An electric cooperative is, therefore, like an electric membership corporation, a public utility. Alabama Power Co. v. Cullman County Electric Membership Corp., supra.

Appellant contends that the Cullman County case, supra, merely holds that a public utility regulated by the A.P.S.C. can enjoin the operations of a public utility which is not regulated by the A.P.S.C. We do not think the case was so limited. The court, as heretofore pointed out, used the following language:

> " 'A private corporation lawfully operating a public utility [Ala. Power Co.] may have an injunction against *another* private corporation operating without authority of law a similar utility [Cullman County Electric Membership Corp.] which competes with and injures the former's business.' " (Emphasis supplied.)

It seems manifest, therefore, that Southern Pine Electric Cooperative has the right to enjoin Alabama Power Co.'s unlawful operation until such time as the Power Co. may obtain a certificate of convenience and necessity as required by law for the reason that such operation is an injurious invasion of the Coop.'s property rights although its right to serve this area is not exclusive. Alabama Power Co. v. Cullman County Electric Membership Corp., supra; Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929; Id., 257 U.S. 66, 42 S.Ct. 24, 66 L.Ed. 131; Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; Birmingham Electric Co. v.

City of Bessemer, 237 Ala. 240, 244, 186 So. 569; Kosciusko County Rural Electric Membership Corp. v. Public Service Comm., 225 Ind. 666, 77 N.E.2d 572; Texas Motor Coaches, Inc. v. Railroad Commission, Tex. Civ.App., 41 S.W.2d 1074; Payne v. Jackson City Lines, 220 Miss. 180, 70 So.2d 520; Niagara Gorge R. Co. v. Gaiser, 109 Misc. 38, 178 N.Y.S. 156; Brooklyn City R. Co. v. Whalen, 191 App.Div. 737, 182 N.Y.S. 283; United Traction Co. v. Smith, 115 Misc. 73, 187 N.Y.S. 377; Jacksonville Bus Line Co. v. Watson, 344 Ill.App. 175, 100 N.E.2d 391; Danville, Urbana & Champaign Railway Co. v. T. L. Clark Truck Co., 1923, 231 Ill.App. 339; Warehouse Distributing Corp. v. Dixon, 97 Ind.App. 475, 187 N.E. 217; Sylvania Home Telephone Co. v. Public Utilities Commission of Ohio, 97 Ohio St. 202, 119 N.E. 205; Northern Pac. Ry. Co. v. Schoenfeldt, 123 Wash. 579, 213 P. 26; State ex rel. Seattle & R. V. R. Co. v. Superior Court for King County, 123 Wash. 116, 212 P. 259; 73 C.J.S. Public Utilities § 10, p. 1005; § 42, p. 1101; § 63, pp. 1144, 1145; 29 C.J.S. Electricity §§ 1, 13.

Thus in Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 237, 73 L.Ed. 483, 488, supra, the U. S. Supreme Court observed, "The owner [of the franchise right to operate a ginning business] may resort to a court of equity to restrain the illegal operation [operation of competing business under void permit] upon the ground that such operation is an injurious invasion of his property rights. * * * The injury threatened by such invasion is the impairment of the owner's business, for which there is no adequate remedy at law."

And in Birmingham Electric Co. v. City of Bessemer, supra [237 Ala. 240, 186 So. 572] (holding that appellee was not under the jurisdiction of the A.P.S.C. in extending its power system beyond its corporate limits), this court observed, "There is another phase of the case however, if sustainable, that would uphold the equity of the bill. If, as the bill asserts, the municipality can not engage in the business of establishing and maintaining a distribution system outside its corporate limits, without obtaining from the Alabama Public Service Commission a certificate of convenience and necessity, then the threatened competition of the municipality to the complainant's lawfully conducted business would be unlawful, although complainant is operating under a non-exclusive franchise."

Appellant also contends that the A.P.S.C. has exclusive jurisdiction to inquire into the construction and operation of the line in question. This line is not an ordinary extension of an existing system in the usual course of business and was constructed without authority of law, that is, without a certificate of convenience and necessity and to the special injury of the Coop. The rule is that under these circumstances, the aid of the courts may be invoked by the injured party without first making complaint to the Public Service Commission. Northern Pac. Ry. Co. v. Schoenfeldt, supra; State ex rel. Seattle & R. V. R. Co. v. Superior Court, supra; Jacksonville Bus Line Co. v. Watson, supra; Danville, Urbana & Champaign R. Co. v. T. L. Clark Truck Co., supra; Warehouse Distributing Corp. v. Dixon, supra; Sylvania Home Telephone Co. v. Public Utilities Commission of Ohio, supra; Ex parte Jones, 160 S.C. 63, 158 S.E. 134, 140, 77 A.L.R. 235; 73 C.J.S. Public Utilities §§ 39, 63.

Many of the authorities cited in brief by counsel for appellant are distinguishable from my conclusion upon the ground that they are contrary to the holding of this court in Alabama Power Co. v. Cullman County Electric Membership Corp., supra. There are also distinguishable features in the other cited authorities, e. g., in Sheridan County Electric Co-op. v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 P.2d 742; there was no question of the public utility operating without a certificate of convenience and necessity; in Pee Dee Electric Cooperative, Inc. v. Public Service Commission, 229 S.C. 155, 92 S.E.2d 171, the Public Service Commission, upon a hear-

**460**

ing, ordered the extension in question because in its opinion the public interest required that the Power Co. so extend; in Wattsburg Telephone Cooperative Ass'n v. Pennsylvania Public Utility Comm., 182 Pa. Super. 594, 128 A.2d 160, no certificate of convenience and necessity was required, reasoned the court, because the company was providing service in the disputed area prior to the effective date of the Public Service Commission law; in Clearwater Power Co. v. Washington Water Power Co., 78 Idaho 150, 299 P.2d 484, 485 it appeared that by statute a certificate was not required where the area was not served by a public utility of like character; a Coop., reasoned the court, was not a public utility of like character.

. The Power Co., and C. H. Wallis and S. A. Jackson, owners of the limestone crushing plant, signed a written contract for the furnishing of electric service by the Power Co. to Wallis and Jackson. The Power Co. takes the point that Wallis and Jackson are necessary parties respondent to this proceeding and that the trial court erred in overruling its demurrer to the bill which pointed out this defect. It may again be pertinent to observe that the question herein is not the right of the Power Co. to enter into this territory, but rather their right to enter without a certificate of convenience and necessity from the A.P.S.C.

To be a necessary and indispensable party to a bill in whose absence the court will not proceed to a final decree, one must have a material interest in the issue which will be necessarily affected by the decree before it will be said the court may not proceed in his absence. Mathison v. Barnes, 245 Ala. 289, 16 So.2d 717; McCary v. McMorris, 1957, 265 Ala. 493, 92 So.2d 319.

" '* * * It is not all persons who have an interest in the subject-matter of the suit, but, in general, those only who have an interest in the object of the suit, who are ordinarily required to be made parties. Story's Eq.Pl. (10th Ed.), p. 75, §§ 72, 136 et seq. * * *' "—Hodge v. Joy, 207 Ala. 198, 207, 92 So. 171, 180.

Hence, Jackson and Wallis were not necessary parties respondent in whose absence the court could not proceed. Tennessee Public Service Co. v. City of Knoxville, 170 Tenn. 40, 91 S.W.2d 566.

I, therefore, dissent from the views expressed by the majority and think the decree below should be affirmed.

COLEMAN, J., concurs.